[No. S046075. Aug. 5, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
KERMIT VARGAS CRUZ, Defendant and Appellant.

## COUNSEL

Roger A. Stoll and J. Bradley O'Connell, under appointments by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Catherine A. Rivlin, Ronald E. Niver and Bruce Ortega, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GEORGE, C. J.**—The question before us is whether proof that the defendant suffered a 1992 conviction for first degree burglary adequately proved the truth of a serious felony enhancement allegation as defined by Penal Code section 1192.7, subdivision (c)(18) (section 1192.7(c)(18)).[1] Section 1192.7(c)(18) defines serious felonies for the purpose of sentence enhancement as including "burglary of an inhabited dwelling house, or trailer coach as defined by the Vehicle Code, or inhabited portion of any other building . . . ." The quoted language duplicated the definition of first degree burglary in effect at the time section 1192.7(c)(18) last was amended in 1986. (Stats. 1986, ch. 489, § 1, p. 1809 [section 1192.7(c)(18)]; Stats. 1982, ch. 1297, § 1, p. 4787 [section 460—differing only in its use of the word "the" before "inhabited portion"].) In 1989, however, the Legislature added the phrase "burglary of . . . [a] vessel . . . which is inhabited and designed for habitation" to the definition of first degree burglary in section 460. (Stats. 1989, ch. 357, § 3, pp. 1475-1476, eff. Jan. 1, 1990.)

The Court of Appeal concluded that proof of a first degree burglary conviction under section 460, based upon a burglary committed after the effective date of the 1989 amendment, does not prove adequately that a defendant has previously committed a serious felony for the purpose of sentence enhancement under section 1192.7(c)(18), because of the divergence between the two sections that began with the 1989 amendment. We disagree. As we shall explain, the phrase "inhabited dwelling house" is a broad, inclusive term that includes an inhabited vessel. The circumstance that the Legislature amended the statutory definition of first degree burglary in section 460, to include explicitly burglary of an inhabited vessel, does not require us to interpret the broad, inclusive term "inhabited dwelling house" in a narrow fashion when the term appears in section 1192.7(c)(18). We conclude that proof that the defendant was convicted of a 1991 first degree burglary, a crime that may include burglary of an inhabited vessel, adequately proves the truth of a serious felony enhancement based upon a previous conviction for "burglary of an inhabited dwelling."

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

I

In 1993, a jury convicted defendant of two counts of second degree robbery (§§ 211, 212.5, former subd. (b) [now subd. (c)]), and one count of possession of a firearm by an ex-felon (§ 12021, subd. (a)). The jury also found true the allegations that defendant used a firearm in committing the robberies. (§ 12022.5, subd. (a).) In a bifurcated trial, a second jury found true the allegation that defendant had suffered a prior serious felony conviction in 1992 for a first degree burglary that occurred in 1991. (§§ 667, subd. (a), 1192.7(c)(18).) In a separate proceeding, another jury convicted defendant of one count of escape (involving custody for a felony; § 4532, subd. (b)), an escape that occurred after defendant was arraigned on the robbery charges. In yet another separate proceeding, the court revoked defendant's probation for the 1992 first degree burglary conviction (§§ 459, 460). He was sentenced on all matters simultaneously, receiving a total term of twelve years and eight months in state prison, which included a five-year enhancement for the 1992 first degree burglary conviction.

Defendant appealed, and the Court of Appeal granted his motion for consolidation of the separate proceedings below. Defendant claimed on appeal that there was insufficient evidence to establish a prior serious felony conviction within the meaning of sections 667, subdivision (a), and 1192.7(c)(18), and that the trial court had failed to instruct the jury fully on the elements of this enhancement. He argued the prior conviction could have been for burglary of a vessel under section 460, a crime he claims would not be a prior serious felony conviction under section 1192.7(c)(18). He also claimed there was instructional error at trial.

The Court of Appeal agreed that proof of the 1992 first degree burglary conviction provided insufficient evidence that the prior conviction involved a burglary as defined by section 1192.7(c)(18). The court vacated the five-year enhancement imposed under section 667, subdivision (a), and remanded the matter for resentencing, without reaching defendant's claim of instructional error.[2]

The People petitioned for review, claiming substantial evidence supported the jury's finding on the sentence enhancement allegation under a proper reading of the relevant statutes.

---

[2]In light of our reversal of the judgment of the Court of Appeal, the claim of instructional error should be considered by that court on remand.

II

A.

Section 667 provides for a sentence enhancement for defendants who previously have been convicted of a serious felony. Section 667, subdivision (a), provides in pertinent part that "any person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately." Subdivision (a)(4) of section 667 provides that: "As used in this subdivision, 'serious felony' means a serious felony listed in subdivision (c) of Section 1192.7."

Section 1192.7, subdivision (c), provides in pertinent part: "As used in this section, 'serious felony' means any of the following: [¶] . . . (18) burglary of an inhabited dwelling house, or trailer coach as defined by the Vehicle Code, or inhabited portion of any other building."

The crime of burglary is divided into degrees. For some years, section 460 provided in pertinent part that: "Every burglary of an inhabited dwelling house or trailer coach as defined by the Vehicle Code, or the inhabited portion of any other building committed in the nighttime . . . ." is burglary of the first degree, and that "[a]ll other kinds of burglary are of the second degree." (Stats. 1978, ch. 579, § 23, p. 1985.) Indeed, since 1923 our law has provided, with other qualifications including that the crime be committed in the nighttime, that burglary of an "inhabited dwelling house" is a first degree burglary. (Stats. 1923, ch. 362, § 1, p. 747.) In 1982, the Legislature removed the qualification that first degree burglary must occur in the nighttime. (Stats. 1982, ch. 1290, § 1, p. 4774; Stats. 1982, ch. 1297, § 1, p. 4786.) Of particular import to this case, in 1989 the Legislature again amended the section, effective January 1, 1990. As amended, the section added a reference to inhabited vessels. Thus, at the time defendant committed the 1991 offense of burglary, section 460 provided in pertinent part: "1. Every burglary of an inhabited dwelling house, *vessel, as defined in the Harbors and Navigation Code, which is inhabited and designed for habitation*, or trailer coach as defined by the Vehicle Code, or the inhabited portion of any other building, is burglary of the first degree. [¶] 2. All other kinds of

burglary are of the second degree." (Stats. 1989, ch. 357, § 3, pp. 1475-1476, italics added.)[3]

## B.

■ The Court of Appeal properly noted that enhancement allegations must be pleaded and proved. (*People* v. *Wims* (1995) 10 Cal.4th 293, 312 [41 Cal.Rptr.2d 241, 895 P.2d 77]; *People* v. *Hernandez* (1988) 46 Cal.3d 194, 208 [249 Cal.Rptr. 850, 757 P.2d 1013].) A judgment of conviction establishes the necessarily adjudicated elements of the crime involved in the conviction, for the purpose of enhancement allegations. The trier of fact, however, may look beyond the judgment to the entire record of the prior conviction to determine whether the previous offense involved conduct required to establish the truth of the enhancement allegation. (*People* v. *Guerrero* (1988) 44 Cal.3d 343, 354, 355 [243 Cal.Rptr. 688, 748 P.2d 1150].)

Applying these rules, the Court of Appeal held that proof of defendant's conviction for a 1991 violation of section 460 did not adequately prove a prior serious felony conviction under section 1192.7(c)(18). The Court of Appeal observed that in 1991, when defendant committed first degree burglary, section 460 defined the crime as specifically including burglary of an inhabited vessel.[4] The Court of Appeal pointed out that the applicable definition of burglary as a serious felony under section 1192.7(c)(18) did not state specifically that it included burglary of an inhabited vessel. The statutory definition of first degree burglary under section 460, the court reasoned, is broader than the definition of the serious felony of burglary under section 1192.7(c)(18). Accordingly, proof that defendant has suffered a prior first degree burglary conviction may prove the commission of a crime that is not included in the narrower definition of burglary contained in section 1192.7(c)(18). As such, proof of the burglary conviction does not necessarily demonstrate that defendant committed the offense referred to in section 1192.7(c)(18).

The Court of Appeal also considered the record to determine whether there was other proof that defendant had committed an offense as defined by section 1192.7(c)(18). It noted that at the trial on the prior felony conviction

---

[3]Section 460 again was amended, effective January 1, 1992. The amendment added "floating home, as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code" to the definition of first degree burglary. (Stats. 1991, ch. 942, § 15.) As the Court of Appeal pointed out, defendant's conviction reflects the offense as defined at the time he committed the crime, when the "floating home" language was not included in section 460.

[4]Throughout the opinion, we refer to section 460 as amended in 1989, unless otherwise indicated. (See Stats. 1989, ch. 357, § 3, pp. 1475-1476.)

allegation, the prosecutor offered the clerk's minutes of the proceedings at which defendant entered his change of plea, reflecting that defendant had pleaded guilty to violating sections 459 and 460, former subdivision 1 (now subdivision (a)), and describing the offense as "(First Degree Burglary—Residential) as set Forth in Count One of the Information." In addition, a probation order noted that defendant was convicted of "violation of . . . section 459-460.1 (*First Degree Burglary-Residential)." Another document, entitled "Report—Indeterminate Sentence, or Other Sentence Choice," noted that defendant had been convicted by guilty plea of first degree burglary. Defendant's probation officer testified that defendant was the person referred to in the probation order. No preliminary hearing transcript or copy of the information was offered.

The Court of Appeal concluded that this evidence did not demonstrate whether the burglary was of an inhabited vessel, or whether, instead, the burglary fit the definition of section 1192.7(c)(18). The court held that evidence that the previous burglary was "residential" did not adequately narrow the offense to one defined by section 1192.7(c)(18), that is, a burglary of a residence other than an inhabited vessel, because the term "residential" is a broad term that would include burglary of an inhabited vessel. Therefore, the court found the evidence insufficient to support the finding as to the truth of the enhancement allegation. We granted review to consider whether the Court of Appeal's conclusion was correct.

### III

We examine the language and history of section 1192.7(c)(18) to determine whether proof of a 1991 violation of section 460 adequately supports the finding as to the truth of the enhancement allegation.

In June 1982, the voters adopted section 1192.7(c)(18) as part of Proposition 8. That initiative enacted sections 667 and 1192.7 to provide for a sentence enhancement for repeat offenders who commit "serious felonies" as enumerated in section 1192.7. (*People* v. *Jackson* (1985) 37 Cal.3d 826, 830 [210 Cal.Rptr. 623, 694 P.2d 736].) Although most of the "serious felonies" listed in section 1192.7 referred to specific, defined criminal offenses, section 1192.7(c)(18), as originally enacted by the electorate, did not. Rather, as enacted, it listed as a serious felony "burglary of a residence," a term we noted "does not correspond precisely to the elements of any then-existing criminal offense." (*People* v. *Jackson, supra*, 37 Cal.3d at p. 832.)

We explained that the electorate treated burglary of a residence as seriously as the violent felonies listed in section 1192.7 on the premise that such

burglaries are so inherently dangerous that persons who repeatedly commit this type of offense should be punished as harshly as violent recidivists. (*People* v. *Jackson, supra,* 37 Cal.3d at p. 832.) In order to carry out the electorate's intent to deter such conduct, we construed section 1192.7(c)(18) "as referring not to specific criminal offenses, but to the criminal conduct described therein." (37 Cal.3d at p. 832; see also *People* v. *Myers* (1993) 5 Cal.4th 1193, 1199 [22 Cal.Rptr.2d 911, 858 P.2d 301]; *People* v. *Guerrero, supra,* 44 Cal.3d at pp. 347-348.)

The Legislature amended section 1192.7(c)(18) in 1986. (Stats. 1986, ch. 489, § 1, p. 1809.) Deleting reference to "burglary of a residence," the Legislature substituted the current language: "burglary of an inhabited dwelling house, or trailer coach as defined by the Vehicle Code, or inhabited portion of any other building." (*Ibid.*) This language matched the definition of first degree burglary then contained in section 460 (Stats. 1982, ch. 1297, § 1, p. 4786 [identical except for the nonsubstantive difference of an article and a comma]), language which, as we have seen, no longer contained the requirement that the burglary occur in the nighttime. The 1986 amendment of section 1192.7(c)(18) reflects an evident legislative intent to correct the anomaly we identified in *People* v. *Jackson, supra,* 37 Cal.3d 826, that is, that the term "burglary of a residence" did not refer to any specific, identified offense. (*People* v. *Harrell* (1989) 207 Cal.App.3d 1439, 1445 [255 Cal.Rptr. 750] [holding that the amendment to section 1192.7(c)(18) was intended to make it consistent with the definition of first degree burglary].)

Legislative history supports the view that the Legislature amended section 1192.7(c)(18) in order to prevent any misunderstanding, by conforming the language of section 1192.7(c)(18) to the definition of first degree burglary. ▮▮▮ Thus, the Assembly Committee on Public Safety's analysis of the bill stated that differences in wording between section 1192.7(c)(18) and other provisions of the Penal Code had led to confusion and "in some cases, require special findings in order to apply Proposition 8 enhancements." (Assem. Com. on Pub. Safety, Rep. on Assem. Bill No. 3733 (1985-1986 Reg. Sess.) p. 1.)[5] Far from departing from the electorate's original intent, the bill was designed to " 'conform Penal Code § 1192.7(c)

[5]As we have explained, "it is well established that reports of legislative committees and commissions are part of a statute's legislative history and may be considered when the meaning of a statute is uncertain. (See *Southern Cal. Gas Co.* v. *Public Utilities Com.* (1979) 24 Cal.3d 653, 659 [156 Cal.Rptr. 733, 596 P.2d 1149]; *People* v. *Knowles* (1950) 35 Cal.2d 175, 182 [217 P.2d 1]; *Southern Pac. Co.* v. *Ind. Acc. Com.* (1942) 19 Cal.2d 271, 278-279 [120 P.2d 880]; *Planned Protective Services, Inc.* v. *Gorton* (1988) 200 Cal.App.3d 1, 15 [245 Cal.Rptr. 790]; *People* v. *Martinez* (1987) 194 Cal.App.3d 15, 22 [239 Cal.Rptr. 272]; *Maben* v. *Superior Court* (1967) 255 Cal.App.2d 708, 713 [63 Cal.Rptr. 439].) The United States

to the appropriate Penal Code provisions . . . and delete those acts that do not easily relate to a current specific Penal Code provision. . . . This would end any confusion caused by the differences, while keeping true to the intent of the electorate.'" (Assem. Com. on Pub. Safety, Rep. on Assem. Bill No. 3733 (1985-1986 Reg. Sess.) p. 1.)

The Senate analysis provided to the Senate Committee on Judiciary reflects the same understanding that the bill's purpose was "to correct drafting deficiencies in the Proposition 8 initiative thereby conforming the serious felony definition of that provision to related Penal Code definitions." (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 3733 (1985-1986 Reg. Sess.) as amended June 4, 1986, p. 2; see also Sen. Rules Com., Rep. on Assem. Bill No. 3733 (1985-1986 Reg. Sess.) as amended June 4, 1986, p. 2 [". . . the proposed amendments are intended to conform Penal Code Section 1192.7(c)—part of the Proposition 8 package—to the appropriate Penal Code provisions."].)

As is evident, the Legislature amended section 1192.7(c)(18) for the purpose of making it clear that section 1192.7(c)(18) would include any first degree burglary encompassed by the then existing language of section 460. No intent appears to narrow the application of the "burglary of a residence" serious felony enhancement. As the court stated in *People* v. *Harrell, supra,* 207 Cal.App.3d 1439, the amendment was intended simply as a clarification of the existing provision. (*Id.* at p. 1445.) The language of section 1192.7(c)(18) has not been altered since 1986. It appears, accordingly, that those burglaries that were intended to be treated as serious felonies by virtue of the 1986 amendment of section 1192.7(c)(18) should continue to constitute serious felonies for the purpose of that provision.

Keeping in mind the intent of the electorate and the Legislature in enacting and amending section 1192.7(c)(18), we consider the meaning of the words the Legislature chose to employ, that is, the phrase "inhabited dwelling house." ▆▆▆ The fundamental task of statutory construction is to "ascertain the intent of the lawmakers so as to effectuate the purpose of

Supreme Court has long followed a similar practice in using committee reports as an aid in construing federal legislation. (See *Commissioner* v. *Bilder* (1962) 369 U.S. 499, 502-505 [8 L.Ed.2d 65, 68-69, 82 S.Ct. 881]; *Wright* v. *Vinton Branch* (1937) 300 U.S. 440, 463, fn. 8 [81 L.Ed. 736, 744, 57 S.Ct. 556, 112 A.L.R. 1455].) The rationale for considering committee reports when interpreting statutes is similar to the rationale for considering voter materials when construing an initiative measure. In both cases it is reasonable to infer that those who actually voted on the proposed measure read and considered the materials presented in explanation of it, and that the materials therefore provide some indication of how the measure was understood at the time by those who voted to enact it." (*Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7 [253 Cal.Rptr. 236, 763 P.2d 1326].)

the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute." (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420].) The words of a statute are to be interpreted in the sense in which they would have been understood at the time of the enactment. (*Resure, Inc.* v. *Superior Court* (1996) 42 Cal.App.4th 156, 164 [49 Cal.Rptr.2d 354]; *People* v. *Fair* (1967) 254 Cal.App.2d 890, 893 [62 Cal.Rptr. 632]; see also *Peralta Community College Dist.* v. *Fair Employment & Housing Com.* (1990) 52 Cal.3d 40, 52 [276 Cal.Rptr. 114, 801 P.2d 357] [declaration of later Legislature of little weight in determining the relevant intent of the enacting Legislature].) We presume that the legislators were aware of the law of burglary in enacting section 1192.7(c)(18), and of judicial decisions interpreting the language they chose to employ. (See *Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1155 [278 Cal.Rptr. 614, 805 P.2d 873]; *Estate of McDill* (1975) 14 Cal.3d 831, 837 [122 Cal.Rptr. 754, 537 P.2d 874].)

At the time the Legislature amended section 1192.7(c)(18) in 1986, no published decision in California specifically had addressed the question whether burglary of an inhabited vessel constituted "burglary of an inhabited dwelling house" for purposes of the then existing provisions of section 460, so as to render such an offense first degree burglary.[6] Cases interpreting the term "inhabited dwelling house" in section 460, however, had made it clear that this term should be construed to effectuate the legislative purposes underlying the statute, namely, to protect the peaceful occupation of one's residence. Thus, the courts had recognized that our burglary law stems from the common law policy of providing heightened protection to the residence. (*People* v. *Gauze* (1975) 15 Cal.3d 709, 712-713 [125 Cal.Rptr. 773, 542 P.2d 1365]; *People* v. *Lewis* (1969) 274 Cal.App.2d 912, 917 [79 Cal.Rptr. 650]; see also *People* v. *Guthrie* (1983) 144 Cal.App.3d 832, 847 [193 Cal.Rptr. 54].) The occupied dwelling continued to receive heightened protection under our statutes in order to avoid the increased danger of personal violence attendant upon an entry into a "building currently used as sleeping and living quarters." (*People* v. *Lewis, supra,* 274 Cal.App.2d 912, 921.) As the court in *Lewis* explained, "a person is more likely to react violently to burglary of his living quarters than to burglary of other places because in the former case persons close to him are more likely to be present, because the property threatened is more likely to belong to him, and because the home is usually regarded as a particularly private sanctuary, even as an extension of the person." (*Id.* at p. 920.) Courts specifically have recognized that the distinction between first and second degree burglary is

---

[6] One case did affirm a second degree burglary conviction for burglary of a cabin cruiser at night, but the case does not discuss whether the crime could have been charged and proved as a first degree burglary. (*People* v. *Holt* (1948) 88 Cal.App.2d 42 [198 P.2d 58].)

founded upon the perceived danger of violence and personal injury that is involved when a residence is invaded. (*People* v. *Parker* (1985) 175 Cal.App.3d 818, 823 [223 Cal.Rptr. 284]; *People* v. *Lewis, supra,* 274 Cal.App.2d at pp. 920-921.) This policy extends to inhabited vessels, of course, because the danger of violence inherent in the invasion of an inhabited vessel is the same as that attending any other living quarters. If, as the case law has established, areas such as an attached garage not having an entrance into the house (see *People* v. *Moreno* (1984) 158 Cal.App.3d 109, 113 [204 Cal.Rptr. 17]), or a house whose owner had been absent for two years (see *People* v. *Marquez* (1983) 143 Cal.App.3d 797, 800-802 [192 Cal.Rptr. 193]), are within the above stated policies informing the law of first degree burglary, it seems clear that an inhabited vessel would be, as well.

■ More technically, courts have explained that the term "inhabited dwelling house" means a "structure where people ordinarily live and which is currently being used for dwelling purposes. [Citation.] A place is an inhabited dwelling if a person with possessory rights uses the place as sleeping quarters intending to continue doing so in the future." (*People* v. *Fleetwood* (1985) 171 Cal.App.3d 982, 987-988 [217 Cal.Rptr. 612]; see also *People* v. *Guthrie, supra,* 144 Cal.App.3d at p. 838; *People* v. *Cardona* (1983) 142 Cal.App.3d 481, 484 [191 Cal.Rptr. 109]; *People* v. *Allard* (1929) 99 Cal.App. 591, 592 [279 P. 182].) The term "inhabited dwelling house" for many years has been considered a broad, inclusive definition (*People* v. *Grover* (1986) 177 Cal.App.3d 1182, 1187 [223 Cal.Rptr. 444], and cases cited), and has been analyzed in terms of whether the dwelling was being used as a residence. (See 1 Witkin, Cal. Crimes (1963) Crimes Against Property, § 452, p. 415 ["The place—whether dwelling house or building— must be *inhabited.* This requirement makes relevant some of the common law decisions and distinctions on dwelling house. Thus, it can be any kind of structure if used as a habitation."]; Comment, *Criminal Law—Development of the Law of Burglary in California* (1951-1952) 25 So.Cal.L.Rev. 75, 100-101 [declaring that the 1923 amendment to section 460 defining first degree burglary in part as entry into an inhabited dwelling house, caused California law more closely to resemble common law, with its special protection of the home]; 3 Wharton's Criminal Law (14th ed. 1980) § 335, pp. 207-208 ["A structure qualifies as a dwelling house even though it is a makeshift home, so long as it is used regularly for the purpose of sleeping." (Fn. omitted.)].) Nothing in an inhabited vessel's marine environment distinguishes it from other structures included in the term. Certainly, a vessel's character as an inhabited dwelling should entitle its occupants to the same protection from intrusion and violence as is accorded any other residence. Because an inhabited vessel is one occupied by a "person with possessory

rights" who "uses the place as sleeping quarters" (*People* v. *Fleetwood*, *supra*, 171 Cal.App.3d at pp. 987-988), and because the nature of such a vessel gives rise to the same interest in peaceful occupancy as any other habitation, we believe inhabited vessels were included in the term "inhabited dwelling house."[7]

In addition, since 1977, section 459 has explained that for the purpose of the entire chapter (entitled "burglary") in which the section is contained, the term "inhabited" means "currently being used for dwelling purposes, whether occupied or not." (§ 459.) Such a definition certainly would encompass a vessel designed for habitation.

We reject defendant's argument that because vessels are enumerated in section 459,[8] but not in section 460, and because they may be mobile, rather than fixed, an intent to exclude vessels from section 460 was established before the 1989 amendment. This argument is based upon the Court of Appeal's decision in *People* v. *Moreland* (1978) 81 Cal.App.3d 11 [146 Cal.Rptr. 118]. In that case, the court considered whether a recreational vehicle came within the definition of "inhabited dwelling house or occupied building" as it appeared in section 246, a provision that prohibits a person from discharging a firearm into certain types of habitation. After concluding that the history of amendments to this section strongly suggested the foregoing phrase did not include recreational vehicles, the court rejected the Attorney General's contention that these terms should be interpreted broadly, as they have been construed in section 459. The court conceded that the terms "house" and "building" as used in section 459 have been interpreted very broadly, but opined that section 460 had not been interpreted so

---

[7]Later authorities confirm the view that the term "inhabited dwelling house" is subject to a broad interpretation, but we do not rely on them as they were not available to the Legislature when section 1192.7(c)(18) was amended. (See *People* v. *Wilson* (1992) 11 Cal.App.4th 1483, 1488 [15 Cal.Rptr.2d 77] [tent qualifies as inhabited dwelling house]; *People* v. *Wilson* (1989) 208 Cal.App.3d 611, 615 [256 Cal.Rptr. 422] [holding locked bedroom within boarding house is inhabited dwelling house, and observing that "courts have traditionally analyzed first degree burglary 'in terms of whether the dwelling was being used as a residence' "]; *People* v. *Deay* (1987) 194 Cal.App.3d 280, 284 [239 Cal.Rptr. 406] [collecting cases establishing that "courts have consistently analyzed first degree burglary in terms of whether the dwelling was being used as a residence"]; see also 3 Wharton's Criminal Law (15th ed. 1995) § 325, p. 256 [noting that dwelling house may be a fishing vessel for purpose of burglary law]; Annot. (1989) 68 A.L.R.4th 425, 449, § 16 [noting that a houseboat cabin is a building for the purpose of a burglary statute]; *id.* at p. 498, § 70 [vessel cabin subject to burglary].)

[8]Section 459 provides in pertinent part: "Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, as defined in Section 21 of the Harbors and Navigation Code, floating home, as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, railroad car, locked or sealed cargo container . . . trailer coach . . . house car . . . is guilty of burglary." Reference to floating homes was added in 1991. (Stats. 1991, ch. 942, § 14.)

broadly. (81 Cal.App.3d at p. 21.) The court declared that a "reasonable inference" could be drawn that because a recreational vehicle is enumerated in section 459 (as a "house car"), defining burglary, but not specifically enumerated in section 460, it is not included in the term "inhabited dwelling house" as contained in section 460. (81 Cal.App.3d at p. 21.)

We do not believe that the Legislature would conclude from *People* v. *Moreland, supra*, 81 Cal.App.3d 11, that *any structure* listed in section 459—but not specifically enumerated in section 460—was excluded from the latter section. The *Moreland* opinion did not purport to establish such a broad rule, nor would such a rule be at all reasonable, since many structures that are enumerated in section 459 but not mentioned in section 460, most notably "room," "tenement," and "apartment," long have been understood as included in the term "inhabited dwelling house." (See *People* v. *Fleetwood, supra*, 171 Cal.App.3d at p. 988.)

As for the claim that *People* v. *Moreland, supra*, 81 Cal.App.3d 11, establishes that only a structure fixed to the ground may be considered an "inhabited dwelling house," and that the Legislature so must have understood section 460 after the *Moreland* opinion was decided, we reject that claim and find no support for it in the *Moreland* opinion itself. That opinion merely observed that cases interpreting section 459 had interpreted the statute broadly, noting (among other observations) the absence of any requirement that the structure entered be fixed to realty. (81 Cal.App.3d at p. 21.) The court then contrasted the one case it was able to find that suggested a narrower interpretation of section 460. (*People* v. *Moreland, supra*, 81 Cal.App.3d. at p. 21.) As we have explained, later cases made it clear, however, that the terms used in section 460, like those used in section 459, are subject to a broad interpretation (*People* v. *Grover, supra*, 177 Cal.App.3d at p. 1187; see also *People* v. *Fleetwood, supra*, 171 Cal.App.3d at p. 987; *People* v. *Guthrie, supra*, 144 Cal.App.3d at p. 838; *People* v. *Cardona, supra*, 142 Cal.App.3d at p. 484.) Nor have we found any case indicating that an inhabited dwelling house must be set on a foundation in order to be subject to the protection provided by the additional punishment set forth under section 460. (See Perkins & Boyce, Criminal Law (3d ed. 1982) p. 256 ["A regular place of abode is a 'dwelling house' for purposes of burglary, moreover, even if it is on wheels and not restricted to a particular locality."]; but see Annot. (1961) 78 A.L.R.2d 778, 780 [asserting that a "building" is a structure erected upon land].)

Although we have not found any California case (decided either prior to or subsequent to the 1986 amendment) that has discussed the precise issue whether burglary of an inhabited vessel constitutes a burglary of an "inhabited dwelling house," the reasoning of the prior California cases broadly

interpreting the term "inhabited dwelling house" as used in section 460 fully supported the conclusion that burglary of an inhabited vessel would constitute burglary within the meaning of that statute. Furthermore, although the question of the application of section 460 to burglary of an inhabited vessel had not yet been presented in California, the Minnesota Supreme Court had held several years earlier that burglary of a houseboat cabin is a burglary of a "building," where the statute defined "building" as a " 'dwelling or other structure suitable for affording shelter for human beings.' " (*State* v. *Vredenberg* (Minn. 1978) 264 N.W.2d 406, 406-407; see also *Shoemaker* v. *State* (Alaska Ct.App. 1986) 716 P.2d 391, 392 [burglary of fishing vessel is burglary of dwelling, where statute defines dwelling as a building designed for or used as a home, and defines building to include vessels].)

We properly may assume that when the electorate enacted the five-year enhancement provided in sections 667 and 1192.7(c)(18) for serious felonies committed by repeat offenders, it was responding to the same concern—that burglary of a residence was likely to escalate into violence—expressed in the above cases interpreting the language of section 460. And, as we have shown, at the time the Legislature amended section 1192.7(c)(18) to conform its provisions to the definition of first degree burglary contained in section 460, it shared the electorate's intent to deter recidivism involving such a dangerous crime. Accordingly, in light of (1) the prior California cases broadly interpreting the term "dwelling house" for purposes of section 460, (2) the legislative objective underlying this statutory language (that is, recognition of the increased danger and gravity of a residential burglary), and (3) the out-of-state cases construing similar language to include burglary of an inhabited vessel, we believe the term "burglary of an inhabited dwelling house," when incorporated into section 1192.7(c)(18) in 1986, encompassed burglary of an inhabited vessel. Because the language of section 1192.7(c)(18) has remained unchanged since 1986, it follows that the phrase "burglary of an inhabited dwelling house," as used in that section, continues to include burglary of an inhabited vessel. Thus, an individual who has suffered a conviction for burglary of an inhabited vessel has sustained a conviction of a "serious felony" that will support a five-year enhancement under section 667.

In arguing against this conclusion, defendant relies upon the amendment to section 460 enacted in 1989, three years after the enactment of the relevant provisions of section 1192.7(c)(18). As noted, this amendment to section 460 expressly included inhabited vessels within the ambit of first degree burglary. Defendant urges that subsequent to (and as a result of) this amendment, the term "inhabited dwelling house" must be given a more restrictive meaning, so as to exclude vessels from the provisions of both section 460 and section 1192.7(c)(18).

On the face of the statute, no such interpretation is required. Although the added reference to inhabited vessels makes explicit the inclusion of vessels among the habitations protected by the first degree burglary law, it does not compel the conclusion that the inclusive term "inhabited dwelling house" thereafter must be read more narrowly. It would be anomalous to conclude the Legislature intended thereby to narrow the general definition of first degree burglary, while making it explicit that marine habitations are equally protected under the law from criminal intrusion. It would be even more anomalous to conclude that the Legislature intended to restrict the scope of serious felony enhancements for first degree burglaries, while making it clear it intended to punish burglary of an inhabited vessel to the same extent as any other first degree burglary. We discern no indication that the Legislature, in amending section 460 to specify that burglary of an inhabited vessel is first degree burglary, intended to put prosecutors to the task of demonstrating that a prior first degree burglary conviction (perhaps obtained in a distant jurisdiction, many years earlier) did *not* involve an inhabited vessel (or, as the statute later was amended to provide, a floating home), in order to prove that the defendant had incurred a prior serious felony conviction.

Defendant points to the legislative history of the 1989 amendment, indicating the Legislature was informed that section 460 did not already punish burglary of an inhabited vessel as a first degree burglary.[9] Indeed, the Legislative Counsel's Digest and other sources apparently so informed the Legislature. (Legis. Counsel's Dig., Assem. Bill No. 162 (1989-1990 Reg. Sess.); Assem. 3d reading analysis of Assem. Bill No. 162 (1989-1990 Reg. Sess.) p. 2; Sen. Com. on Judiciary, Rep. on Assem. Bill No. 162 (1989-1990 Reg. Sess.) as introduced, pp. 1-2, 4.) Obviously, these declarations do not have the force of law, for the interpretation of law is a judicial function. (*City of Sacramento* v. *Public Employees' Retirement System* (1994) 22 Cal.App.4th 786, 795 [27 Cal.Rptr.2d 545].) We are not bound, accordingly, by the misinformation delivered to the Legislature, when the amendment itself showed no intent to narrow the definition of "inhabited dwelling house."

---

[9]The People have asked us to take judicial notice of various letters and legislative staff analyses related to this legislation. The request that we take judicial notice of legislative staff analyses in this connection is granted. (Evid. Code, §§ 452, 459; *DuBois* v. *Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 393 [20 Cal.Rptr.2d 523, 853 P.2d 978]; *Southern Cal. Gas Co.* v. *Public Utilities Com.* (1979) 24 Cal.3d 653, 659 [156 Cal.Rptr. 733, 596 P.2d 1149].) We do not rely, however, on evidence of the individual views of proponents of legislation. (See *Quintano* v. *Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062, fn. 5 [48 Cal.Rptr.2d 1, 907 P.2d 1057].) Accordingly, we deny the request to take judicial notice of a letter received by the legislator who introduced the bill, requesting that such a bill be introduced, and of a letter sent by the proponent of the bill to the Governor, urging that he approve the bill.

To the extent these sources reflect the Legislature's understanding, or more accurately, misunderstanding, that it was expanding the reach of section 460 when it amended that statute in 1989 to provide that burglary of an inhabited vessel should be treated as first degree burglary, this circumstance does not afford any justification for restricting or narrowing the scope of the previously enacted provisions of section 1192.7(c)(18), so as to exclude burglary of an inhabited vessel from the category of burglaries covered by section 1192.7(c)(18). ■ It is well established, of course, that when the Legislature declares that an amendment is intended simply to "clarify" the meaning of a preexisting version of a statute, such a declaration is not determinative as to the meaning of the earlier version. (See, e.g., *Peralta Community College Dist.* v. *Fair Employment & Housing Com.*, *supra*, 52 Cal.3d 40, 52 [such declarations are "of little weight"].) Because the determination of the meaning of statutes is a judicial function, a court, faced with the question of determining the scope of the earlier version, still must ascertain from all the pertinent circumstances and considerations whether the subsequent amendment actually constitutes a modification or instead a clarification of the preexisting provision. (*Ibid.*; see also *Harris* v. *Capital Growth Investors XIV*, *supra*, 52 Cal.3d at p.1158, fn. 6 [noting that subsequent legislative declarations are not binding as to the intent of the Legislature that enacted the statute, and observing that the Legislature has no authority to interpret a statute]; *Del Costello* v. *State of California* (1982) 135 Cal.App.3d 887, 893, fn. 8 [185 Cal.Rptr. 582] [the Legislature has no authority to declare what it meant in an earlier enactment]; but see *Eu* v. *Chacon* (1976) 16 Cal.3d 465, 470 [128 Cal.Rptr. 1, 546 P.2d 289] [such a legislative statement is not binding, but may supply evidence of earlier legislative intent]; *California Emp. etc. Com.* v. *Payne* (1947) 31 Cal.2d 210, 213-214 [187 P.2d 702] [same]; *City of Sacramento* v. *Public Employees' Retirement System*, *supra*, 22 Cal.App.4th at p. 798.)

By analogy, when a court is called upon to determine the scope of an earlier version of an existing statute, the Legislature's assumption that its current amendment represents an expansion of an earlier provision cannot be determinative of the question. Under such circumstances, a court still must examine all of the relevant considerations in performing its function of deciding the proper interpretation of the preexisting provision. For the reasons explained above, we conclude the preexisting language of section 460, as incorporated into section 1192.7(c)(18) in 1986, properly should be interpreted as having encompassed burglary of an inhabited vessel.

This conclusion is consistent with the overall purpose of the 1989 amendment to section 460. Nothing in the legislative history of that amendment remotely suggests that the Legislature intended to restrict the reach of the

then existing provisions of section 1192.7(c)(18) to exclude burglary of an inhabited vessel from the statute. Indeed, such a restriction would conflict directly with the fundamental legislative purpose of the 1989 amendment of section 460, by requiring that burglary of an inhabited vessel be treated differently—and punished less severely—than burglary of inhabited land-based premises for purposes of determining whether the burglary constituted a serious felony. The 1989 amendment to section 460, on the other hand, obviously reflected the Legislature's intent that burglary of an inhabited vessel be treated *equivalently* to burglary of a land-based residence.

The Court of Appeal recognized in this case that there was authority for giving an expansive reading to the term "inhabited dwelling house" as used in both sections 460 and 1192.7(c)(18), and for concluding the term would include an inhabited vessel. Nonetheless, the court felt constrained to reach a different conclusion in order to avoid violating a rule of statutory construction. That rule directs courts to avoid interpreting statutory language in a manner that would render some part of the statute surplusage. (See *Brown* v. *Superior Court* (1984) 37 Cal.3d 477, 484 [208 Cal.Rptr. 724, 691 P.2d 272]; *City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47, 54 [184 Cal.Rptr. 713, 648 P.2d 935].) The Court of Appeal reasoned that, in the event it were to interpret section 1192.7(c)(18) and its reference to "inhabited dwelling house" to include the burglary of a vessel, the reference in section 460 to vessels would be redundant. Defendant also urges that we consider the "established rule of construction that ambiguities in penal statutes are to be construed most favorably to the accused." (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1011 [239 Cal.Rptr. 656, 741 P.2d 154].)

We have said that in interpreting a statute, " ' "[i]f *possible*, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." ' " (*DuBois* v. *Workers' Comp. Appeals Bd.*, *supra*, 5 Cal.4th at p. 388, italics added.) Rules such as those directing courts to avoid interpreting legislative enactments as surplusage are mere guides and will not be used to defeat legislative intent. (See *Dickey* v. *Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 811 [151 P.2d 505, 157 A.L.R. 324]; see also *Bledstein* v. *Superior Court* (1984) 162 Cal.App.3d 152, 160-161 [208 Cal.Rptr. 428]; *People* v. *Hacker Emporium, Inc.* (1971) 15 Cal.App.3d 474, 477 [93 Cal.Rptr. 132].) As we already have stressed, the fundamental goal of statutory interpretation is to ascertain and carry out the intent of the Legislature. (*People* v. *Pieters*, *supra*, 52 Cal.3d at p. 898; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) To the extent that uncertainty remains in interpreting statutory language, "consideration should be given to the consequences that will flow from a particular interpretation" (*Dyna-Med, Inc.* v.

*Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323]), and both legislative history and the "wider historical circumstances" of the enactment may be considered. (*Ibid.*) Further, ambiguities are not interpreted in the defendant's favor if such an interpretation would provide an absurd result, or a result inconsistent with apparent legislative intent. (*People* v. *Pieters, supra,* 52 Cal.3d at p. 899.)

As we have shown, the interpretation proposed by defendant is quite inconsistent with the Legislature's evident intent in amending section 1192.7(c)(18)—an intent to effectuate the desire of the electorate to enhance the sentences imposed on recidivists who have committed a prior residential burglary. Nothing contained in the subsequent amendment to section 460 was intended to limit the applicability of the section 1192.7(c)(18) enhancement. The amendment to section 460 was intended, rather, to ensure that vessels would receive the *same* protection as other habitations. We would contravene the intent and purpose of the Legislature that amended section 460 in 1989, if, out of a perceived need to avoid rendering statutory language "surplusage," we were to construe the Legislature's addition of language to section 460 (mandating equivalent first degree treatment for burglary of an inhabited vessel and burglary of a land-based residence) as having exactly the *opposite* effect with respect to the enhancement provisions of section 1192.7(c)(18). Sound principles of statutory construction dictate against our arriving at such an unreasonable conclusion.

Defendant asks us to examine related amendments to the definition of first degree robbery, and the sentence enhancement for certain prior residential robberies. He argues these amendments demonstrate that the Legislature purposefully omitted parallel amendments to the burglary provision contained in section 1192.7(c)(18).

Defendant points out that, before 1990, section 212.5, subdivision (a), defined first degree robbery as (among other things) "robbery which is perpetrated in an inhabited dwelling house or trailer coach, as defined in the Vehicle Code, or the inhabited portion of any other building." (Stats. 1986, ch. 1428, § 2, p. 5123; see also former section 213.5, added by Stats. 1982, ch. 1293, § 2, p. 4783.) The section was amended effective January 1, 1990, to include robbery of "a vessel, as defined in Section 21 of the Harbors and Navigation Code, which is inhabited and designed for habitation." (Stats. 1989, ch. 361, § 1, p. 1486.) The amendment, defendant points out, was nearly identical to the amendment of section 460, enacted in the same year.

In addition, defendant asks us to consider section 667.5, subdivision (c)(9), which provides for a sentence enhancement for a prior prison term for

certain violent felonies, including robbery of an inhabited dwelling house committed with personal use of a deadly weapon. Defendant points out that prior to its amendment in 1991, this statute encompassed "robbery perpetrated in an inhabited dwelling house or trailer coach, as defined in the Vehicle Code, or in the inhabited portion of any other building." (Stats. 1987, ch. 611, § 1, p. 1953.) The statute was amended effective January 1, 1992, to include robbery of a "vessel, as defined in Section 21 of the Harbors and Navigation Code, which is inhabited and designed for habitation." (Stats. 1991, ch. 451, § 1.)

Defendant would have us infer from the Legislature's failure to insert parallel amendments into section 1192.7(c)(18) that it intended that burglary of a vessel not be considered a serious felony for the purpose of the five-year enhancement provided under section 667. Defendant points out the Legislature did have occasion to amend section 1192.7(c)(18) in the years after the amendment of section 460, but did not amend the statute to conform to the amendment of section 460, as it did with respect to sections 667.5, subdivision (c)(9), and 212.5, subdivision (a).

The circumstance that the Legislature did not enact a clarifying amendment to section 1192.7, subdivision (c)(18), as it did with respect to sections 212.5 and 667.5, does not signify that the term "inhabited dwelling house," as used in section 1192.7(c)(18), does not include inhabited vessels. There is no indication that the Legislature considered and rejected such an amendment to section 1192.7(c)(18), and we frequently have expressed reluctance to draw conclusions concerning legislative intent from legislative silence or inaction. (See, e.g., *People* v. *King* (1993) 5 Cal.4th 59, 77 [19 Cal.Rptr.2d 233, 851 P.2d 27]; *Ornelas* v. *Randolph* (1993) 4 Cal.4th 1095, 1108 [17 Cal.Rptr.2d 594, 847 P.2d 560]; *Harris* v. *Capital Growth Investors XIV*, *supra*, 52 Cal.3d at p. 1156; *Ingersoll* v. *Palmer* (1987) 43 Cal.3d 1321, 1349 [241 Cal.Rptr. 42, 743 P.2d 1299].) In light of our foregoing discussion of the legislative history of these various provisions, we are not persuaded by defendant's argument in this regard.

 In summary, it is clear that when the electorate originally enacted sections 667 and 1192.7, imposing a five-year sentence enhancement for serious felonies, it intended to enhance recidivist sentences to be imposed when a prior residential burglary is involved, having concluded that residential burglary is as potentially dangerous as other listed serious felonies. (*People* v. *Jackson*, *supra*, 37 Cal.3d at pp. 831-832; see also *People* v. *Guerrero*, *supra*, 44 Cal.3d at pp. 347-348.) The Legislature, in amending section 1192.7(c)(18) in 1986 to conform the statute to the definition of first degree burglary, simply intended to eliminate any uncertainty caused by the

electorate's reference to conduct not matching a specific definition of a crime. By enacting this amendment, the Legislature attempted to ensure that the intent of the electorate—to treat residential burglary as a serious felony—would be carried out. Nothing in the 1989 amendment to section 460 was intended to limit the applicability of the enhancement provided by section 1192.7(c)(18). The 1989 amendment was intended simply to ensure that vessels would receive the same protection as other habitations; it would be wholly anomalous to conclude that this enactment had the unintended effect of creating a class of first degree residential burglary—"burglary of an inhabited vessel"—that would escape the enhancement otherwise provided by section 1192.7(c)(18).

To avoid any possible misunderstanding, we emphasize that in reaching our decision, we reject any argument that this court must, or should, add to section 1192.7(c)(18) a reference to inhabited vessels in order to correct a legislative oversight. We have not added words to section 1192.7(c)(18), nor have we rewritten that provision. Rather, we have attempted to ascertain the most reasonable interpretation of the Legislature's intent in enacting section 1192.7(c)(18), as amended in 1986, in light of the statutory language, the prior California authorities broadly interpreting that language, and out-of-state decisions and secondary authority construing similar language to include burglary of an inhabited vessel.

## IV

The judgment of the Court of Appeal is reversed and the matter remanded to that court for further proceedings not inconsistent with this opinion.

Kennard, J., Baxter, J., Werdegar, J., and Brown, J., concurred.

**ANDERSON, J.***—I respectfully dissent. The majority concludes that it has "not added words to [Penal Code] section 1192.7[, subdivision] (c)(18), nor . . . rewritten that provision." (Maj. opn., *ante*, this page.) Such bold disclaimer notwithstanding, that is precisely what the majority has done. In adding language to Penal Code[1] section 1192.7, subdivision (c)(18) (section 1192.7(c)(18)) under the guise of effecting legislative intent, the majority ignores a specific legislative directive prohibiting such reconfiguration and violates several relevant principles of statutory interpretation.

A. *The Intent of the Legislature Is Manifested in the Words It Employs*

The majority and I begin on the same road: The most significant goal of statutory interpretation is ascertaining and carrying out the intent of the

---

*Presiding Justice, Court of Appeal, First Appellate District, Division Four, assigned by the Acting Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

Legislature. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) However, the majority and I head in different directions when it comes to choosing the manner in which such intent should be ascertained. In my view, legislative intent should be discerned from the words actually used—and the words not used—by the Legislature in enacting statutes. The majority's approach seems to be to seek out some meaning lurking behind the words used—and not used—by the Legislature. In seeking out such "hidden meaning," the majority follows a disturbing trend of relying on extrinsic aids which do not illuminate the intent of the collective legislative body.

Article IV, section 8, subdivision (b) of the California Constitution provides: "The Legislature may make no law except by statute and may enact no statute except by bill . . . ." Thus, under the California Constitution, legislative will and intent may *only* be expressed through statutes—statutes which are, in turn, composed of language—words which reflect intent. If the Legislature is constitutionally precluded from *expressing* its intent except through the words employed in the statutes it enacts, it seems reasonable that the courts should examine *those* words to determine legislative intent. That limitation is even more significant because the Legislature is a collective body made up of 120 persons, each of whose minds may harbor an "intention" which is different from that of any other legislator.

"Despite the anthropomorphic overtones of the word 'intention,' the Legislature is not a person. What goes on in the minds of individual legislators when enacting a statute cannot fix its meaning. Rather, the Legislature is a collective entity and its 'intentions' are primarily known by its legislative acts. . . . The statutes themselves embody the collective 'intention' of the Legislature. '[W]henever a law is adopted, all that is really agreed upon is the words.' [Citation.]" (*In-Home Supportive Services* v. *Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 739 [199 Cal.Rptr. 697], fn. omitted, original italics.)

B. *The Words Employed by the Legislature Make It Clear That Burglary of a Vessel Is Not Covered by Section 1192.7(c)(18)*

Section 1192.7(c)(18) establishes "burglary of an inhabited dwelling house, or trailer coach as defined by the Vehicle Code, or inhabited portion of any other building" as a " 'serious felony.' " The definition of first degree burglary in section 460 is broader—it includes not only the burglaries enumerated in section 1197.2(c)(18) but also burglary of an inhabited vessel or floating home. Put simply, the Legislature's intent, as manifested in plain language—the words of the two statutes—is that certain burglaries which are of the first degree do not qualify as serious felonies.

In my view, the reason the majority reaches its questionable conclusion—that "an individual who has suffered a conviction for burglary of an inhabited vessel has sustained a conviction of a 'serious felony' " (maj. opn., *ante*, at p. 779)—is because the majority conducts its analysis backwards. Instead of looking first at the plain language of the statutes, the majority begins its analysis by purportedly examining the "history" of the 1986 amendment of section 1192.7(c)(18). Had the majority begun by looking at the two statutes separately, it would have found each clear and unambiguous. If the majority had looked at the statutes together, the majority would have found no collective ambiguity or conflict between them, nor would the majority have found any uncertainty or ambiguity in the specific application of the statutes in the case at bench. Accordingly, there would have been no need for the majority to search for indicia of legislative intent. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) In sum, had the majority looked first at the words of the two statutes, the majority would have reached the conclusion that burglary of an inhabited vessel, although of the first degree, is not a "serious felony."

## C. *The Majority's Analysis Is Flawed*

As a result of starting down the wrong path and analyzing "history" first, the majority reaches several conclusions about the 1986 amendment of section 1192.7(c)(18). First, the majority concludes that the Legislature "amended section 1192.7(c)(18) for the purpose of making it clear that section 1192.7(c)(18) would include any first degree burglary encompassed by the then existing language of section 460." (Maj. opn., *ante*, at p. 774.) The majority then concludes that "[n]o intent appears to narrow the application of the 'burglary of a residence' serious felony enhancement." (*Ibid.*) The majority finally concludes that "those burglaries that were intended to be treated as serious felonies by virtue of the 1986 amendment of section 1192.7(c)(18) should continue to constitute serious felonies for the purpose of that provision." (*Ibid.*) The second and third conclusions are of no consequence to the majority's analysis or mine. The first is crucial to my analysis and ultimately highlights the error in the majority's analysis: the 1986 amendment made it clear that section 1192.7(c)(18) would include any first degree burglary covered by the "*then existing* language of section 460." (Maj. opn., *ante*, at p. 774, italics added.) Put another way, nothing in the language of the amendment—or in the "history" considered by the majority—suggests that the Legislature intended that *future* expansions of, or additions to, the acts constituting first degree burglary would *automatically* constitute a "serious felony" under section 1192.7(c)(18). Had the Legislature so intended, it could easily have designated "burglary in the first degree" or "first degree burglary as defined in section 460" as a "serious felony."

When the Legislature amended section 460 in 1989 and 1991, the legislators believed that they were *expanding* the acts which constituted first degree burglary. In 1989, the Legislative Counsel's Digest[2] informed all the legislators at the time they voted on the amendment of section 460 that "[u]nder existing law, burglary of an inhabited dwelling house, trailer coach, or inhabited portion of a building is burglary of the 1st degree, which is a felony. *All other burglaries, including burglaries of a vessel, are of the 2nd degree,* and are punishable either as a felony or a misdemeanor. [¶] *This bill would make burglary of an inhabited vessel which is designed for habitation burglary of the 1st degree, thus, expanding the scope of an existing crime* and creating a state-mandated local program." (Legis. Counsel's Dig., Assem. Bill No. 162, 4 Stats. 1989 (Reg. Sess.) Summary Dig., p. 121, italics added.) In 1991, the Legislative Counsel's Digest informed the legislators: "(5) Existing law defines the entry of various, specified places with larcenous or other felonious intent as burglary, and defines the entry of various inhabited places, or a trailer coach, as burglary in the 1st degree. [¶] *This bill would add a floating home to the list of places the entry of which with larcenous or felonious intent constitutes burglary, and would specify that such entry constitutes burglary in the 1st degree,* thereby imposing a state-mandated local program *by expanding the definition of a crime.*" (Legis. Counsel's Dig., Assem. Bill No. 628 (1991-1992 Reg. Sess.), italics added.)

The majority avoids the obvious conflict between its conclusion and the legislators' *actions* in amending section 460 in 1989 and 1991 and their understanding of the effect of their actions, as evidenced by the Legislative Counsel's Digest, by finding that the legislators (and by implication the Legislative Counsel) "misunder[stood]" the true state of the law—that burglary of a vessel which is "inhabited and designed for habitation" and/or a "floating home" was *already* of the first degree, at least as far back as 1986. The majority concludes that the Legislature was wrong for three reasons: (1) prior California cases have broadly interpreted the term "dwelling house" for purposes of section 460; (2) the legislative objective of the statutory language recognizes the increased danger and gravity of residential burglary; and (3) out-of-state cases have construed similar language to include burglary of an inhabited vessel. Regrettably, none of the factors relied upon by the majority supports its conclusion.

---

[2]While I take issue in part E. of this dissent with the majority's indiscriminate reliance upon legislative committee staff analyses, I believe that the Legislative Counsel's Digest does qualify for judicial notice and may be appropriately considered in discussing legislative intent. See further discussion in footnote 6, *post.*

1. *California law, the terminology of sections 459 and 460, and rationality support the conclusion that inhabited vessels and floating homes are not encompassed in the term "inhabited dwelling house."*

The majority tacitly concedes that prior to 1986 *no* California authority supported the proposition that burglary of an inhabited vessel constitutes " 'burglary of an inhabited dwelling house.' " (Maj. opn., *ante*, at p. 775.) The majority then notes that several cases have given a broad definition to the term "inhabited" and, based on that broad definition, concludes that a vessel which is inhabited (" 'currently used for dwelling purposes whether occupied or not' ") is included within the term "inhabited dwelling house." (Maj. opn., *ante*, at p. 777.)

What the majority does *not* note is that no reported decision between 1986 and the date of the Legislature's amendment of section 460 in 1989 concluded that burglary of an inhabited vessel constitutes "burglary of an inhabited dwelling house." The majority also fails to note that none of the cases it cites considered, even referentially, burglaries of vessels. Most importantly, however, the majority fails to give appropriate weight to the only two reported California decisions which have considered burglaries of boats—*People* v. *Holt* (1948) 88 Cal.App.2d 42 [198 P.2d 58] and *People* v. *Moreland* (1978) 81 Cal.App.3d 11 [146 Cal.Rptr. 118]—both of which conclude that such burglaries are of the second degree, albeit by implication in the former and dictum in the latter.

In *People* v. *Holt*, the Court of Appeal considered whether or not sufficient evidence, apart from the statement of an accomplice, corroborated appellant's conviction of second degree burglary of a cabin cruiser. The Court of Appeal found such corroboration in appellant's statement to the police in which he admitted rowing around the Newport docks with the accomplice while the accomplice entered several boats. (*People* v. *Holt*, *supra*, 88 Cal.App.2d at pp. 43-44.) In 1948, only burglaries of an "inhabited dwelling house or building committed in the night time" or burglaries committed by armed individuals or by individuals who assaulted "any person" were of the first degree. (Stats. 1923, ch. 362, § 1, p. 747.) In *Holt*, there was no factual dispute about (a) the boat being "inhabited" under the broad scope given that term by the majority (Holt and his accomplice took canned goods from the boat; and the owner left the boat in the early evening and did not return until 10:30 p.m., indicating that he cooked aboard it and likely planned to sleep aboard it); (b) the burglary having been committed at night (the accomplice testified that they started rowing "toward night" and continued rowing "after dark," and the owner was only gone in the evening); and (c) the burglary not involving an assault or a weapon (no testimony is

reported relating to either issue). The only logical conclusion to be drawn from the facts of *Holt* and Holt's conviction of *second* degree burglary is that an inhabited *vessel* is *not* the same thing as an "inhabited dwelling house." If they were, Holt's conviction would have been for *first* degree burglary.

The majority addresses and dismisses *People* v. *Moreland, supra,* 81 Cal.App.3d 11, but fails to consider its real significance to the case at bench. In *Moreland,* the Court of Appeal considered whether Moreland's discharge of a firearm at a motor home came within the provisions of (then) section 246 which prohibited the firing of weapons at, " 'an inhabited dwelling house or occupied building.' " (81 Cal.App.3d at p. 14.) The *Moreland* court carefully and thoroughly considered numerous definitions of "house" and "building" and concluded that a motor home did not come within any reasonable meaning of either term. In so concluding, the court observed: "Would the ordinary citizen believe that [a motor home] is a house or a building, any more than he would believe a 24-foot *cabin cruiser or sail boat,* or a railroad car, or an airplane is a house or building, even if equipped with bunks and a kitchen?" (*Id.* at p. 19, italics added.) The *Moreland* court is correct. No ordinary citizen—and for that matter, no sophisticated legislator—would think that a vessel or a boat fell within the definition of "house."

One other factor which militates in favor of the view that first degree burglary has not historically included invasions of vessels (inhabited or otherwise) is found in the language of section 459 which *includes* vessels in its lengthy list of subjects which may be the object of burglary. Certainly, had the Legislature intended before 1989 to classify the invasion of an inhabited vessel as burglary of the first degree (in section 460), it would have done so.

The conclusion I draw from the only relevant case law, *Holt* and *Moreland,* and the inclusion of "vessel" within section 459 and its exclusion from section 460 (prior to 1989) is that burglaries of vessels, whether inhabited or not, were of the second degree until 1989.

2. *Recognizing the policy underlying the 1986 amendment of section 1192.7(c)(18) does not authorize its amendment by this, or any other, court.*

The second factor influencing the majority's decision that burglaries of inhabited vessels have been of the first degree since at least 1986 is based on the policy underlying the 1986 amendment of section 1192.7(c)(18)—that "residential" burglaries are more dangerous than nonresidential burglaries.

Assuming that the majority is at least partially correct in that assertion,[3] that policy is *irrelevant* to understanding whether or not burglaries of inhabited vessels were of the first degree in 1986. Moreover, concluding that occupants of inhabited vessels are entitled to the same protection from intrusion and violence as the occupants of other inhabited residences is a value judgment which under our system of separation of powers is designated to be made by those empowered to enact the law and not by those trusted to interpret it.

### 3. The out-of-state decisions cited by the majority do not support its conclusion.

The last factors cited by the majority in support of its conclusion that burglaries of inhabited vessels have been of the first degree in California since at least 1986 are two foreign decisions: *State* v. *Vredenberg* (Minn. 1978) 264 N.W.2d 406 and *Shoemaker* v. *State* (Alaska Ct.App. 1986) 716 P.2d 391. As a starting point, it is worth noting that the majority cites no authority whatsoever for the proposition that it is appropriate to consider the decisions of foreign jurisdictions which have interpreted their state's penal laws to interpret California's penal laws. Moreover, the two cases support the *opposite* conclusion from the one for which the majority has cited them.

In *State* v. *Vredenberg*, the Minnesota Supreme Court concluded that cabins of houseboats constituted "buildings" under Minnesota law. The court began its analysis by noting that "building" was then defined by a "streamline[d]" Minnesota law to include " 'a dwelling or other structure suitable for affording shelter for human beings . . . .' " (*State* v. *Vredenberg, supra,* 264 N.W.2d at p. 406.) The court then noted that the definition of "building" before the law was streamlined specifically included "vessels" and that the intent of the drafters of the change was *not* to omit certain structures from the protection of the statute. (*Ibid.*) Simply put, the Minnesota Supreme Court held that, where Minnesota's Criminal Code once specifically defined buildings to include vessels and where no intent had been evidenced to narrow that definition, vessels *remained* buildings under Minnesota law. (*Id.,* at p. 407.) Here, we are interpreting a statute in which neither "dwelling house" nor "building" has ever been defined by the Legislature. Moreover, as alluded to in part C.1., *ante,* if the Legislature had viewed "vessel" as synonymous with "building," it would not have included *both* "building" and "vessel" within the types of structures identified in section 459.

---

[3]While I agree with the fact that, in amending section 1192.7(c)(18) in 1986, the Legislature intended to make it clear that all burglaries which were of the first degree, as *then* defined by section 460, would be deemed "serious" felonies, if the Legislature's objective had actually been to treat all "residential" burglaries as serious felonies, as argued by the majority, it would simply have left section 1192.7(c)(18) alone.

In *Shoemaker* v. *State*, the court of appeals also dealt with criminal codes which provided clear definitions of the terms employed therein. Under Alaska law, a first degree burglary was defined as that of a "building" which was used as a "dwelling." A "building" *specifically* included " 'in addition to its usual meaning . . . any propelled [vessel] . . . adapted for overnight accommodation of persons or for carrying on business . . . .' " (*Shoemaker* v. *State, supra,* 716 P.2d at p. 392.) The only issue raised by the defendant in *Shoemaker* which is arguably relevant to the case at bench was whether or not a fishing boat which was designed to sleep two crew members but which was left unoccupied while the owner tried to sell it constituted a "building" under Alaska law. How logically can an interpretation by a court of another state of the meaning of its laws, which carefully define buildings to *include* vessels, serve as a basis for interpreting California statutes, which explicitly *differentiate* between "vessels" and "buildings?"

D. *The Majority's Approach Ignores (1) Relevant Principles of Statutory Interpretation, (2) Relevant Indicia of Legislative Intent, and (3) the Legislature's Prohibition Against Adding Words to Statutes*

By ignoring the language of sections 459, 460 and 1192.7(c)(18) and attempting to infer some unexpressed legislative intent from extrinsic aids, such as committee analyses, the majority ignores the rule that analysis begins with the plain language of the statutes under consideration. (*Lungren* v. *Deukmejian, supra,* 45 Cal.3d at p. 735.)

By assuming that the 1989 and 1991 additions of the terms "vessel . . . which is inhabited and designed for habitation" and "floating home . . . " to section 460 are of no effect, the majority violates the rule that statutory constructions which render some words mere surplusage should be avoided. (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1010 [239 Cal.Rptr. 656, 741 P.2d 154].)

By ignoring the fact that "vessel" is included in the pre-1989 language of section 459—but not section 460—the majority ignores the rule that, where the drafters of a statute have employed a term in one place and omitted it in another, "it should not be inferred where it has been excluded." (*People* v. *Woodhead, supra,* 43 Cal.3d at p. 1010.)

The majority also gives short shrift to the fact that the Legislature (a) amended the robbery statute (§ 212.5, subd. (a)) in 1990 to include inhabited vessels and (b) amended section 667.5, subdivision (c)(9) (enhancement for prior prison term) to include such robberies. The Legislature's specific choice to address enhancements for crimes committed in or on vessels and

floating homes in one context and not another reflects legislative intent to act in the first context (enhancements for all first degree robberies) and not in the second (enhancements for specific—but not all—burglaries.) Again, it is inappropriate for the majority to ignore such evidence of legislative intent.

The majority also accords little significance to the Legislature's failure to amend section 1192.7(c)(18) in the years following the 1989 amendment of section 460, when it twice amended section 1192.7 for other purposes. Moreover, the majority ignores the Legislature's 1993 amendment of section 1170.95, subdivision (h), to bring floating homes within the definition of burglaries subject to determinate sentencing laws for certain residential crimes and its concomitant failure to address enhancements relating to such crimes. Such repeated failures to act to change the law, when the subject is before the Legislature, should not be deemed a " 'draftsman's oversight' " but, instead, reflect an intent to leave the law as is in areas which are not amended. (*People* v. *McClanahan* (1992) 3 Cal.4th 860, 865 [12 Cal.Rptr.2d 719, 838 P.2d 241].)

In sum, the Legislature has shown that it is aware of numerous parallel provisions relating to residential burglaries and residential robberies and that it knows how to make changes in some of those provisions and not in others. (*T&O Mobile Homes, Inc.* v. *United California Bank* (1985) 40 Cal.3d 441, 455 [220 Cal.Rptr. 627, 709 P.2d 430].) It is inappropriate to infer, as the majority implicitly does, that the Legislature intended that each and every burglary which is added to those enumerated in section 460 should automatically be deemed a "serious felony" under section 1192.7(c)(18). If the Legislature had such an intention in 1986, or at any time since the last amendment of subdivision (c)(18), it would have been very easy to express it by saying "burglary of the first degree" or "first degree burglary as defined in section 460," instead of listing only specific burglaries.

The last two rules of construction violated by the majority are arguably the most significant. First, even if one were to assume that the statutes at issue here are ambiguous or that their meaning is "uncertain" in the context in which we are considering them—a point with which I obviously take issue—long-settled California law requires that any ambiguity *must* be construed most favorably to the accused. (*People* v. *Woodhead, supra*, 43 Cal.3d at p. 1011.) The majority *stretches* to *create* additional criminal liability in violation of this basic principle.

Finally, despite protestations to the contrary, the majority has violated the *Legislature's* cardinal rule regarding interpretation of its own statutes: "In the construction of a statute . . . the office of the judge is simply to ascertain

and declare what is in terms or in substance contained therein, *not to insert what has been omitted*, or to omit what has been inserted . . . ." (Code Civ. Proc., § 1858, italics added.)

No matter how many times one reads section 1192.7(c)(18), never will the words "vessel . . . which is inhabited and designed for habitation" or "floating home" appear.

### E. *The Majority Errs in Considering Staff Analyses in Analyzing Legislative Intent*

Although the majority does not rely heavily upon them in reaching its conclusions about the interpretation of sections 459, 460 and 1192.7(c)(18), I believe that the majority errs in taking judicial notice of certain extrinsic aids—"analyses" of the bill by (a) the Assembly Committee on Public Safety and (b) the Senate Committee on the Judiciary. The majority's consideration of those materials compounds the error made by the majority in beginning its analysis by looking at the "history" of the statutes rather than first examining their language.

1. *Legislative staff analyses and, under existing law, committee reports are to be considered only where the meaning of a statute is "uncertain."*

In choosing to consider the two noted staff analyses,[4] the majority relies on *Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, footnote 7 [253 Cal.Rptr. 236, 763 P.2d 1326]. That choice is erroneous under *Hutnick*. What *Hutnick* *says* is that committee *reports* may be considered "when the meaning of a statute is uncertain." (*Id.* at p. 465, fn. 7.) Here, we are dealing with *staff analyses*—not committee reports. (See discussion in pt. E.2., *post.*) More importantly, however, because the meaning of the 1986 amendment of section 1192.7(c)(18) is not "uncertain" (even under the majority's view), it is inappropriate for the majority to consider committee reports or staff analyses to determine legislative intent.

### 2. *Legislative staff analyses and committee reports are unreliable indicia of legislative intent.*

For decades, California courts have considered extrinsic aids, such as committee reports (cf. *In re Rottanak K.* (1995) 37 Cal.App.4th 260, 267, fn.

---

[4]The majority takes judicial notice of three other staff analyses relating to the 1989 amendment of section 460. (Maj. opn., *ante,* at p. 780, fn. 9.) I do not discuss those analyses because the majority does not quote from them and seems not to rely on them in any fashion. However, I believe the majority errs in taking judicial notice of them, as well.

8 [43 Cal.Rptr.2d 543].), staff analyses (cf. *Hutnick* v. *United States Fidelity & Guaranty Co.*, *supra*, 47 Cal.3d at p. 465), third reading analyses (cf. *People* v. *Tabb* (1991) 228 Cal.App.3d 1300, 1308-1309 [279 Cal.Rptr. 480]), and other documents generated in the process of lawmaking. Most of those cases have examined those extrinsic aids without considering whether or not they are truly useful in determining the intent of the *Legislature*. *Hutnick* is the only case of which I am aware in which this court has indicated why committee reports[5] are theoretically useful: "The rationale for considering committee reports when interpreting statutes is similar to the rationale for considering voter materials when construing an initiative measure. In both cases it is reasonable to infer that those who actually voted on the proposed measure read and considered the materials presented in explanation of it, and that the materials therefore provide some indication of how the measure was understood at the time by those who voted to enact it." (*Hutnick* v. *United States Fidelity & Guaranty Co.*, *supra*, 47 Cal.3d at p. 465, fn. 7.) Unfortunately, *Hutnick* is wrong. What is valid for voter materials is ordinarily *invalid* for committee reports.

In most instances, California legislators who vote on a bill see only its text and the Legislative Counsel's Digest of it.[6] Committee reports, committee staff analyses, hearing transcripts, and sponsors' analyses (to list but a few items generated in the legislative process) are ordinarily *not* included in the materials presented to legislators prior to their voting. Indeed, committee reports and staff analyses may not be seen by the members—or at least all of the members—of the committee which generated them. In my view, it is inappropriate to take judicial notice of any such materials unless, at a minimum, their proponent can demonstrate that they were, in fact, considered by, or at least available to, the entire Legislature.[7]

While I acknowledge that in *Hutnick*, Justice Kaufman at least gave some reason why committee reports merit consideration by courts in determining legislative intent, the same may not be said for any of the six California cases and the two United States Supreme Court cases cited by him in

---

[5]The *Hutnick* court discussed the propriety of considering committee reports; however, what the *Hutnick* court actually considered was an analysis by a committee staff member. (*Hutnick* v. *United States Fidelity & Guaranty Co.*, *supra*, 47 Cal.3d at p. 465.)

[6]The Legislative Counsel's Digest is frequently a valuable tool in assessing legislative intent. The Office of the Legislative Counsel was created by the Legislature in 1913. (Gov. Code, § 10200; Stats. 1913, ch. 322, § 1, p. 626.) The Legislative Counsel is responsible for preparing legislation (Gov. Code, § 10231), and its digest (a synopsis which often describes current law and the purpose and effect of the proposed legislation) precedes the text of each bill voted upon by the Legislature. The Legislative Counsel's Digest, therefore satisfies all criteria discussed in this part and parts E.2. and E.3. of this dissent.

[7]For example, if a committee report were appended to the Legislative Counsel's Digest or otherwise referenced in the digest.

footnote 7. Many cases, including *Hutnick*, which have relied on committee reports or staff analyses cite two cases for the conclusion that such materials may serve as indicia of legislative intent—*Maben* v. *Superior Court* (1967) 255 Cal.App.2d 708, 713 [63 Cal.Rptr. 439] and *Southern Pac. Co.* v. *Ind. Acc. Com.* (1942) 19 Cal.2d 271, 278-279 [120 P.2d 880] (*Southern Pac.*). The two cases merit scrutiny. *Maben* does contain the following language: "It has long been the rule that 'Statements in legislative committee reports concerning the statutory objects and purposes, which are in accord with a reasonable interpretation of the statute, will be followed by the courts. And it will be presumed that the Legislature adopted the proposed legislation with the intent and meaning expressed in committee reports.' (45 Cal.Jur.2d, Statutes, § 168, p. 670.)" (*Maben* v. *Superior Court, supra,* 255 Cal.App.2d at p. 713.) There are two significant points to be made about the proposition of law advanced in *Maben.* First, it is dictum; the court actually addressed the propriety of considering the Legislative Counsel's Digest—not a committee report. Second, although the authority cited for that proposition—California Jurisprudence Second—does contain the language quoted by the *Maben* court, California Jurisprudence's editors cite *Southern Pac.* as the only case supporting it.

*Southern Pac.* is interesting for several reasons. First, there is no author for the opinion; this court adopted the opinion of the Court of Appeal verbatim. Second, the *Southern Pac.* court was analyzing a *federal* statute and considered a report of a United States Senate committee pertaining to the bill in question. Third, the court relied on two authorities in stating that a report which is in accord with a " 'reasonable interpretation' " of the statute could be considered in interpreting—one federal case and " '59 C.J. 1021.' " (*Southern Pac., supra,* 19 Cal.2d at pp. 278-279.) Corpus Juris, in turn, cites numerous federal cases—but no California case—in support of the noted proposition.[8] My conclusion is that the editors of California Jurisprudence, and not this court or any lesser court, created the "rule" that *California* courts may consider *California* legislative committee reports as indicia of legislative intent.[9]

---

[8]Reliance on federal authorities for the proposition that California legislative committee reports are valuable indicia of legislative intent is inappropriate. The federal system of considering bills and passing laws is vastly different from California's. What is valid for the federal system may not be (and in my view is not) valid for California. (For example, in the federal system, a bill is frequently sent to the floor of the House of Representatives or Senate with a committee report recommending its passage and explaining its purpose and effect. Such a report may well be a valuable tool for interpreting the statute, as it is available to every member of the House and Senate.)

[9]I am aware of *no* California case in which the propriety of considering staff analyses has ever been given careful consideration.

In my view, the materials in question should be tested by the criteria suggested by Walter Kendall Hurst in *The Use of Extrinsic Aids in Determining Legislative Intent in California: The Need for Standardized Criteria* (1980) 12 Pacific L.J. 189 et seq. Hurst proposes that courts should examine proffered extrinsic aids from four perspectives in assessing their value in determining legislative intent: credibility (reliability), contemporaneity (when the aid was prepared), proximity (closeness of the origin of the aid to the legislative process), and context (historical circumstances surrounding passage of the legislation and the purposes for which the aid was promulgated). (*Id.* at pp. 192-195.)

The reliability of committee analyses is suspect, as the expertise and level of knowledge of the author are unknown; moreover, in most instances, the names and qualifications of the authors are not available to those—the courts—which must assess the credibility of their analyses. In addition, in most cases, there is no evidence that the analyses have been presented to, or were even available to, the members of the Legislature who voted on the measure. Staff analyses also fail the "context" test in many instances, as they are frequently cursory in nature; indeed, "analyses" are sometimes only filled-in blanks on standardized forms. In sum, staff analyses are generally not valuable tools for assessing legislative intent. I see no reason to deviate from that general rule in the case at bench.

### 3. *The majority errs in taking judicial notice of staff analyses.*

The majority has taken judicial notice of the two staff analyses without adherence to the requisites established by the Evidence Code. First, neither the People nor the defendant asked this court to take judicial notice of these specific analyses. Presumably, the majority is taking judicial notice of them on its own motion. Yet, it has not followed the dictates of Evidence Code sections 459, subdivision (c), and 455, subdivision (a). Simply put, the majority has not given either side the opportunity "to present to the court information relevant to (1) the propriety of taking judicial notice of the matter and (2) the tenor of the matter to be noticed." (Evid. Code, § 455 subd. (a).)

More significantly, however, I cannot see how any court can take judicial notice of staff analyses under the Evidence Code. Evidence Code section 450 precludes courts from taking judicial notice of any matter unless authorized or required by law. I am hard pressed to see how committee reports or staff analyses qualify as matters of which judicial notice may be taken. They are certainly not matters subject to mandatory judicial notice under Evidence Code section 451. Nor do they appear to be matters for permissive judicial

notice under Evidence Code section 452. Are they then "[o]fficial acts" of the Legislature under section 452, subdivision (c)? I cannot see how a staff analysis can qualify as an "act" of the *Legislature* (or, to use the language of subdivision (c), the "legislative . . . department[] . . ."); and I am certain that such an analysis should not be deemed "official."

### F. *Conclusion*

It matters not whether one looks only at the language of section 1192.7(c)(18) or also at the "history" of the changes in section 1192.7 and/or sections 459 and 460. Section 1192.7(c)(18) does not and never has contained the words "inhabited vessel" or "floating home." Because the prosecution in the case at bench failed to establish that defendant's prior first degree burglary conviction was other than of an inhabited vessel or a floating home, insufficient evidence supports the finding of that conviction for enhancement purposes. I would affirm the Court of Appeal.

Mosk, J., concurred.

Appellant's petition for a rehearing was denied September 25, 1996. Chin, J., did not participate therein. Mosk, J., was of the opinion that the petition should be granted.