[No. H021589. Sixth Dist. Oct. 23, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM JOSEPH GARRETT, Defendant and Appellant.

COUNSEL

Alan Siraco, under appointment by the Court of Appeal; and Jonathan Grossman for Defendant and Appellant.

Bill Lockyer, Attorney General, and Gerald A. Engler, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**PREMO, Acting P. J.**—Defendant William Joseph Garrett pled guilty to a residential burglary, a second degree burglary, and a vehicle theft all occurring in 1998, and the trial court found true five "Three Strikes" priors. The court sentenced defendant to 25 years to life in state prison on May 12, 2000, after the March 7, 2000 passage of Proposition 21 amended the definition of serious felony burglary, Penal Code section 1192.7, subdivision (c)(18)[1] (hereafter section 1192.7(c)(18)). On appeal, defendant asserts that his prior second degree residential burglaries were not strike priors under newly amended section 1192.7(c)(18).

### FACTS

On March 30, 1998, someone entered the home of Aldo and Heidi Oliveri through a kitchen window (outside of which defendant's fingerprint was found) and took "everything." A fur coat, jewelry, two wallets containing cash, Social Security cards, credit cards, the main telephone with the answering machine, a camcorder and other electronic equipment, and "a lot of my husband's technical equipment" were taken. A month later, three stolen checks were forged and a phone card was used by a couple who had obtained the phone card from defendant. Defendant was charged with residential burglary (§§ 459, 460, subd. (a)) in Santa Clara County Superior Court case No. 206612.

On the morning of May 12, 1998, the director of the KinderCare Learning Center (KinderCare) found a side window of the building broken and a security bar removed from the door. Missing were KinderCare's computer system, credit card, a jar of quarters, several checks made out to KinderCare, diapers, food, and KinderCare's 1997 Ford van. Defendant was arrested while driving the van later the same day. The KinderCare gas card was found in a fanny pack in the van and the quarters were found in defendant's pocket. Defendant was charged in Santa Clara County Superior Court case No. 205682 with burglary (Pen. Code, §§ 459, 460, subd. (b)) and vehicle theft (Veh. Code, § 10851, subd. (a)).

---

[1] Further statutory references are to the Penal Code unless otherwise stated.

Both cases alleged five 1980 to 1982 prior residential burglary convictions under the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12) and two prison priors (§ 667.5, subd. (b)). The five "serious felon[ies] and/or . . . violent felon[ies]" (§§ 667, subds. (b)-(i), 1170.12) were alleged as "burglary of an inhabited dwelling house" in Santa Clara County Superior Court case Nos. 80439, 76523, 85784, and 78076.

Pursuant to a plea bargain, defendant pled guilty to all charges. The priors in case No. 205682 were dismissed. At a court trial, all five strike priors were found true in case No. 206612 and the prison priors were dismissed. Defendant's *Romero*[2] motion requesting the court to exercise its discretion and strike the priors was denied. Defendant received the 25-year-to-life sentence for the residential burglary and concurrent with it two 2-year terms for the KinderCare burglary and the vehicle theft. This appeal ensued.

### APPLICATION OF SECTION 1192.7(C)(18)

█ Defendant contends the sentence of 25 years to life violates his rights to due process and freedom from cruel and unusual punishment because none of his prior convictions were "serious" felonies as defined in section 1192.7, subdivision (c) as amended by the enactment of Proposition 21. The version of section 1192.7(c)(18) in effect when defendant committed the current crimes defined as a "serious felony" a "[b]urglary of an inhabited dwelling house, vessel, as defined in the Harbors and Navigation Code, which is inhabited and designed for habitation, floating home, as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, trailer coach, as defined by the Vehicle Code, or the inhabited portion of any other building." (Stats. 1998, ch. 754, § 1.) Proposition 21 changed that to "any burglary of the first degree." (§ 1192.7(c)(18).) As applied to defendant's case, the March 2000 amendment to section 1192.7(c)(18) is ameliorative, and therefore is controlling. (*People v. Roberts* (1994) 24 Cal.App.4th 1462, 1466 [29 Cal.Rptr.2d 771].)

Defendant reasons that because Proposition 21 amended section 1192.7(c)(18) "to define serious felony burglaries in terms of an 'offense'— i.e., 'first degree burglary'—rather than in terms of 'conduct,' . . . the rationale central to *Jackson's*[3] holding that the legislative body enacting the law was concerned with 'conduct' and not 'offenses' has been eliminated. Therefore, there is no need to 'go behind' a judgment of conviction for 'second degree' burglary in order to determine the residential nature of the

---

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628].

[3] *People v. Jackson* (1985) 37 Cal.3d 826, 832 [210 Cal.Rptr. 623, 694 P.2d 736] (*Jackson*).

conduct." Defendant maintains that the trial court erred in considering the record of conviction to determine whether his prior burglaries were residential.

Plaintiff counters by tracing the changes to section 1192.7(c)(18) from its inception in June 1982 as part of Proposition 8 (*People v. Cruz* (1996) 13 Cal.4th 764, 772 [55 Cal.Rptr.2d 117, 919 P.2d 731] (*Cruz*)) to the passage of Proposition 21. Plaintiff claims this historical backdrop "shows the following principles, which we submit are not open to dispute: (1) the original purpose of section 1192.7(c)(18) was to include all *residential* burglaries in the list of serious felonies; (2) subsequent legislation has confirmed the broad scope of section 1192.7(c)(18); and (3) courts will not presume that the original purpose of the section has been narrowed or diluted as the unintended consequence of subsequent legislation." (Original italics.)

■ "As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language 'in isolation.' [Citation.] Rather, we look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]' [Citation.] . . . We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' [Citations.]" (*People v. Murphy* (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129].)

■ " '[L]anguage that appears unambiguous on its face may be shown to have a latent ambiguity.' [Citation.] In such a case, a court may turn to customary rules of statutory construction, the ' "wider historical circumstances," ' or legislative history for guidance, keeping in mind the ' "consequences that will flow from a particular interpretation." ' [Citation.] It is not always preferable to rely on the literal meaning of the words used. ' "[I]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." [Citations.] . . . Thus, "[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." ' [Citations.]" (*People v. Townsend* (1998) 62 Cal.App.4th 1390, 1395 [73 Cal.Rptr.2d 438].) ■ "We interpret initiative measures using the ordinary rules and canons of statutory construction. [Citation.] Thus, 'our primary purpose is to ascertain and effectuate the intent of the voters who passed the initiative measure. [Citations.]' [Citation.]" (*Yeroushalmi v. Miramar Sheraton* (2001) 88 Cal.App.4th 738, 747-748 [106 Cal.Rptr.2d 332].)

The original version of section 1192.7(c)(18) listed "burglary of a residence" as a serious felony. At that time, first degree burglary was defined in section 460, subdivision 1, as the nighttime burglary of an inhabited dwelling or trailer coach, or the inhabited portion of any building. (*Cruz, supra*, 13 Cal.4th at p. 770; Stats. 1978, ch. 579, § 23, p. 1985.)

The nighttime requirement for first degree burglary was eliminated from section 460, subdivision 1, in 1982. (Stats. 1982, ch. 1290, § 1, p. 4774; Stats. 1982, ch. 1297, § 1, p. 4786.) Thereafter, the question arose whether a residential burglary which occurred in the daytime prior to the 1982 change qualified as a serious felony conviction under section 1192.7(c)(18) for purposes of the five-year sentence enhancement authorized by section 667, subdivision (a). The Supreme Court found the intent of the electorate was to treat all residential burglaries as "serious" felonies and concluded that section 1192.7(c)(18) referred " 'not to specific criminal offenses, but to the criminal conduct described therein.' " (*Cruz, supra,* 13 Cal.4th at p. 773, quoting *Jackson, supra*, 37 Cal.3d at p. 832.) The court further concluded that the 1986 amendment of section 1192.7(c)(18), which deleted the reference to "burglary of a residence" and substituted "burglary of an inhabited dwelling house, or trailer coach as defined by the Vehicle Code, or inhabited portion of any other building" (Stats. 1986, ch. 489, § 1, p. 1809), was not intended "to narrow the application of the 'burglary of a residence' serious felony enhancement," but rather "was intended simply as a clarification of the existing provision." (*People v. Cruz, supra*, 13 Cal.4th at p. 774.)

Section 460 attained its pre-Proposition 21 language after 1989 and 1991 amendments.[4] Section 1192.7(c)(18) attained its pre-Proposition 21 language in 1998 when the Legislature amended it to conform to section 460 in 1998. The development of the two statutes is shown in the table below:

| DATE | "Serious Felonies" § 1192.7(c)(18) | First Degree Burglary § 460 |
|---|---|---|
| Before June 1982 | | "nighttime burglary of an inhabited dwelling or trailer coach or the inhabited portion of any building" |
| June 1982, Prop. 8 | "Burglary of a residence." | (Sept. 1982) "burglary of an inhabited dwelling house or trailer coach as defined by the Vehicle Code, or inhabited portion of any other building" |

---

[4]Subdivisions of section 460 were redesignated as (a), (b), and (c) in 1991. (Stats. 1991, ch. 942, § 15, p. 4290.)

| 1986, Legislative amendment | "Burglary of an inhabited dwelling house, or trailer coach as defined by the Vehicle Code, or inhabited portion of any other building." | |
|---|---|---|
| 1989 | | Addition of "inhabited dwelling house, vessel, as defined in the Harbors and Navigation Code." (Stats. 1989, ch. 357, § 3, pp. 1475-1476.) |
| 1991 | | Addition of "floating home . . . ." The text read: "Burglary of an inhabited dwelling house, vessel, as defined in the Harbors and Navigation Code, which is inhabited and designed for habitation, floating home, as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, or trailer coach, as defined by the Vehicle Code, or the inhabited portion of any other building." (Stats. 1991, ch. 942, § 15, p. 4290.) |
| 1998, Legislative amendment | "Burglary of an inhabited dwelling house, vessel, as defined in the Harbors and Navigation Code, which is inhabited and designed for habitation, floating home, as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, trailer coach, as defined by the Vehicle Code, or the inhabited portion of any other building." (Stats. 1998, ch. 936, § 13.5.) | |
| March 2000, Prop. 21 | "[A]ny burglary of the first degree." | Section 460 currently provides: "Every burglary of an inhabited dwelling house, vessel, as defined in the Harbors and Navigation Code, which is inhabited and designed for habitation, floating home, as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, or trailer coach, as defined by the Vehicle Code, or the inhabited portion of any other building, is burglary of the first degree." |

The 1989 change to section 460 raised the issue whether burglary of an inhabited vessel qualified as a "serious felony" under the 1986 version of

section 1192.7(c)(18) then in effect which read "[B]urglary of an inhabited dwelling house or trailer coach as defined by the Vehicle Code, or inhabited portion of any other building." (Stats. 1986, ch. 489, § 1, p. 1809.)

That question was answered in the affirmative in 1996 in *Cruz, supra,* 13 Cal.4th at page 779. *Cruz* stated that the electorate and Legislature shared an intent to deter recidivism involving the "dangerous crime" of "residential burglary" and that both California and out-of-state authority broadly interpreted the term "burglary of an inhabited dwelling house." When the Legislature explicitly added inhabited vessels to those protected by the first degree burglary law under section 460, it did not intend to narrow the interpretation of the term "inhabited dwelling house" used in section 1192.7(c)(18) to exclude inhabited vessels. (*Ibid.*) Otherwise, the amendments to section 460 would have the anomalous and absurd result of simultaneously ensuring that burglaries of inhabited vessels were explicitly included among those dwellings deserving of the same punishment as all other first degree burglaries, while narrowing the scope of serious felony enhancements to exclude burglaries of inhabited vessels. (*Ibid.*)

As the court observed, "Nothing contained in the subsequent amendment to section 460 was intended to limit the applicability of the section 1192.7(c)(18) enhancement. The amendment to section 460 was intended, rather, to ensure that vessels would receive the *same* protection as other habitations. We would contravene the intent and purpose of the Legislature that amended section 460 in 1989, if . . . we were to construe the Legislature's addition of language to section 460 (mandating equivalent first degree treatment for burglary of an inhabited vessel and burglary of a land-based residence) as having exactly the *opposite* effect with respect to the enhancement provisions of section 1192.7(c)(18). Sound principles of statutory construction dictate against our arriving at such an unreasonable conclusion." (*Cruz, supra,* 13 Cal.4th at p. 783, original italics.)

Proposition 21 came 18 years after the voters enacted Proposition 8, in which they declared their intent to treat all "residential" burglaries as serious felonies (*Cruz, supra,* 13 Cal.4th at p. 772) and six years after Proposition 184, in which the voters enacted section 1170.12 mandating increased punishment for recidivists in the Three Strikes law. Section 1170.12 was preceded by the statement: " 'It is the intent of the People of the State of California in enacting this measure to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses.' " (Historical and Statutory Notes, 50B West's Ann. Pen. Code (2001 supp.) foll § 1170.12, p. 161.)

When Proposition 21 was presented to the voters, materials in the "Voter Information Guide" and in the "Ballot Measure Summary" informed the voters that: "a YES vote . . . (4) expands the list of violent and serious offenses for which longer prison sentences are given." (Voter Information Guide, Primary Elec. (Mar. 7, 2000) Quick Reference Voter Guide, Prop. 21, p. 6.) In the "Analysis by the Legislative Analyst," voters were informed that Proposition 21 "revises the lists of specific crimes defined as serious or violent offenses, thus making most of them subject to the longer sentence provisions of existing law related to serious and violent offenses. In addition, these crimes would count as 'strikes' under the Three Strikes law." (Voter Information Guide, Primary Elec. (Mar. 7, 2000) Analysis by the Legislative Analyst, pp. 46-47 (Guide).)

A chart summarizing the fiscal effects of the proposed law contained the statement, "[*a*]*dds crimes to the serious and violent felony lists, thereby making offenders subject to longer prison sentences.*" (Guide, *supra*, Figure 1—Prop. 21 Summary of Fiscal Effects of Major Provisions, p. 47, original italics.) Proponents of the initiative told voters that Proposition 21 would "toughen the law to safeguard you and your family." (Guide, *supra*, Argument in Favor of Prop. 21, p. 48.) Ballot summaries and the "Analysis by the Legislative Analyst" in the Guide are recognized sources for determining the voters' intent. (*Hodges v. Superior Court* (1999) 21 Cal.4th 109, 116 [86 Cal.Rptr.2d 884, 980 P.2d 433].)

Defendant states these notes provide "unpersuasive[] argu[ment]" that the voters intended to keep the construction of section 1192.7(c)(18) consistent with its historical construction. Defendant characterizes the language quoted above as " 'ballot arguments that are mere appeals to passion on emotionally charged topics of public policy [which] illuminate the electorate's intent feebly if at all[.]' (*In re Lance W.* (1985) 37 Cal.3d 873, 906, fn. 5 [210 Cal.Rptr. 631, 694 P.2d 744], dis. opn., Mosk, J.)" While the ballot argument that Proposition 21 would "toughen the law to safeguard you and your family[]" (Guide, *supra*, Argument in Favor of Prop. 21, p. 48) possibly could be contorted into qualifying as an "appeal[] to passion on emotionally charged topics of public policy," it is hard to see how this characterization applies to the drier explanation, "a YES vote . . . (4) expands the list of violent and serious offenses for which longer prison sentences are given" (Guide, *supra*, Quick Reference Voter Guide, Prop. 21, p. 6), the Legislative Analyst's statements that Proposition 21 "revises the lists of specific crimes

defined as serious or violent offenses, thus making most of them subject to longer sentence provisions . . ." and the chart's explanation that Proposition 21 "[*a*]*dds crimes to the serious and violent felony lists, thereby making offenders subject to longer prison sentences.*" (Guide, *supra*, Analysis by the Legislative Analyst, Prop. 21, pp. 46-47, Figure 1, p. 47, original italics.)

The only fact defendant musters in support of his interpretation of Proposition 21 is the Legislative Analyst's statement that Proposition 21 *"revises* the lists of specific crimes . . . making *most of them* subject to the longer sentence provisions of existing law . . . ." (Guide, *supra*, Analysis by the Legislative Analyst of Prop. 21, pp. 46-47, italics added.) Defendant reasons, "[t]he amendment to the burglary language should not be considered an 'addition' to the list of 'serious felonies,' because 'residential' burglary was already on the list. The amendment traded one type of burglary for another, rather than making an additional type of burglary a 'serious felony.' " "The ameliorative effect of this amendment is to remove from consideration as strikes 'second degree' burglary convictions for offenses committed before January 1, 1983. 'Second degree' burglaries committed prior to that date have routinely been the subject of litigation in order to determine whether they were residential in nature and therefore 'serious felonies' for sentencing purposes. [Citations.] Any 'first degree' burglary committed after that date is, by definition, residential in nature [citations] and has, therefore, not resulted in much litigation. [¶] . . . [¶] By amending the language of section 1192.7, the voters have indicated an intent that those defendants, like appellant, whose only 'strikes' consist of old 'second degree' burglary convictions, dating from prior to January 1, 1983, should not come within the 'Three Strikes' sentencing scheme because the benefit to society is outweighed by the cost of adjudicating and incarcerating them."

To prevail, defendant must overcome heavy contrary authority. The statute itself does not help defendant. We have listed the pre- and post-Proposition 21 provisions of section 1192.7, subdivision (c) in the following table. The provisions of pre-Proposition 21 section 1192.7, subdivision (c) are in numerical order. The current provisions are lined up next to their predecessors. Consequently, some of the numbers of the current subsection are out of order. Where the numerical progression of the current provisions is interrupted, out-of-order numbers are boldfaced. Section headings of statutes designated by number only are enclosed in brackets and added for the reader's convenience.

## CHANGES TO SECTION 1192.7, SUBDIVISION (C) BY PROPOSITION 21

| BEFORE | CURRENT |
|---|---|
| (1) Murder or voluntary manslaughter. | (1) murder or voluntary manslaughter |
| (2) Mayhem. | (2) mayhem |
| (3) Rape. | (3) rape |
| (4) Sodomy by force, violence, duress, menace, threat of great bodily injury, or fear of immediate and unlawful bodily injury on the victim or another person. | (4) sodomy by force, violence, duress, menace, threat of great bodily injury, or fear of immediate and unlawful bodily injury on the victim or another person |
| (5) Oral copulation by force, violence, duress, menace, threat of great bodily injury, or fear of immediate and unlawful bodily injury on the victim or another person. | (5) oral copulation by force, violence, duress, menace, threat of great bodily injury, or fear of immediate and unlawful bodily injury on the victim or another person |
| (6) Lewd or lascivious act on a child under the age of 14 years. | (6) lewd or lascivious act on a child under the age of 14 years |
| (7) Any felony punishable by death or imprisonment in the state prison for life. | (7) any felony punishable by death or imprisonment in the state prison for life |
| (8) Any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice, or any felony in which the defendant personally uses a firearm. | (8) any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice, or any felony in which the defendant personally uses a firearm |
| (9) Attempted murder. | (9) attempted murder |
| (10) Assault with intent to commit rape, mayhem, sodomy, oral copulation, or robbery *(see new (10) and new (29))*. | (10) assault with intent to commit rape or robbery |
| | **(29)** assault with the intent to commit mayhem, rape, sodomy, or oral copulation, in violation of Section 220 *(see old (10))* |
| (11) Assault with a deadly weapon or instrument on a peace officer. | (11) assault with a deadly weapon or instrument on a peace officer |
| (12) Assault by a life prisoner on a noninmate. | (12) assault by a life prisoner on a noninmate |
| (13) Assault with a deadly weapon by an inmate. | (13) assault with a deadly weapon by an inmate |
| (14) Arson. | (14) arson |
| (15) Exploding a destructive device or any explosive with intent to injure. | (15) exploding a destructive device or any explosive with intent to injure |
| (16) Exploding a destructive device or any explosive causing great bodily injury or mayhem. | (16) exploding a destructive device or any explosive causing bodily injury, great bodily injury, or mayhem |

| | |
|---|---|
| (17) Exploding a destructive device or any explosive with intent to murder. | (17) exploding a destructive device or any explosive with intent to murder |
| (18) Burglary of an inhabited dwelling house, vessel, as defined in the Harbors and Navigation Code, which is inhabited and designed for habitation, floating home, as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, trailer coach, as defined by the Vehicle Code, or the inhabited portion of any building. | (18) any burglary of the first degree |
| (19) Robbery or bank robbery. | (19) robbery or bank robbery |
| (20) Kidnapping. | (20) kidnapping |
| (21) Holding of a hostage by a person confined in state prison. | (21) holding of a hostage by a person confined in a state prison |
| (22) False imprisonment as described in Section 210.5 [false imprisonment for purposes of protection from arrest or as a shield]. | |
| (23) Attempt to commit a felony punishable by death, or imprisonment in the state prison for life. | (22) attempt to commit a felony punishable by death or imprisonment in the state prison for life |
| (24) Any felony in which the defendant personally used a dangerous or deadly weapon. | (23) any felony in which the defendant personally used a dangerous or deadly weapon |
| (25) Selling, furnishing, administering, giving, or offering to sell, furnish, administer, or give to a minor any heroin, cocaine, phencyclidine (PCP), or any methamphetamine-related drug, as described in paragraph (2) of subdivision (d) of Section 11055 of the Health and Safety Code, or any of the precursors of methamphetamines, as described in subparagraph (A) of paragraph (1) of subdivision (f) of Section 11055 or subdivision (a) of Section 11100 of the Heath and Safety Code. | (24) selling, furnishing, administering, giving, or offering to sell, furnish, administer, or give to a minor any heroin, cocaine, phencyclidine (PCP), or any methamphetamine-related drug, as described in paragraph (2) of subdivision (d) of Section 11055 of the Health & Safety Code, or any of the precursors of methamphetamines, as described in subparagraph (A) of paragraph (1) of subdivision (f) of Section 11055 or subdivision (a) of Section 11100 of the Health and Safety Code |
| (26) Any violation of subdivision (a) of Section 289 [forcible sexual penetration] where the act is accomplished against the victim's will by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person. | (25) any violation of subdivision (a) of Section 289 [forcible sexual penetration] where the act is accomplished against the victim's will by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person |
| (27) Grand theft involving a firearm. | (26) grand theft involving a firearm |
| (28) Carjacking. | (27) carjacking |

| | |
|---|---|
| | (28) any felony offense, which would also constitute a felony violation of Section 186.22 [participation in a criminal street gang] |
| (29) Any violation of Section 288.5 [continuous sexual abuse of a child] *(see new (35))*. | **(35)** continuous sexual abuse of a child, in violation of Section 288.5 *(see old (29))* |
| (30) Any violation of Section 244 [assault with caustic chemicals or flammable substances]. | (30) throwing acid or flammable substances, in violation of Section 244 |
| (31) Assault with a deadly weapon or instrument on a firefighter. | (31) assault with a deadly weapon, firearm, machinegun, assault weapon, or semiautomatic firearm or assault on a peace office or firefighter, in violation of Section 245 |
| | (32) assault with a deadly weapon against a public transit employee, custodial officer, or school employee, in violation of Section 245.2, 245.3, or 245.5 |
| | (33) discharge of a firearm at an inhabited dwelling, vehicle, or aircraft, in violation of Section 246 |
| (32) Any violation of Section 264.1 [rape or penetration of genital or anal openings by foreign object, etc.; acting in concert by force or violence . . .] *(see new (34))*. | **(34)** commission of rape or penetration by a foreign object in concert with another person, in violation of Section 264.1 *(see old (32))* |
| (33) Any violation of Section 12022.53 [felony . . . use of a firearm] *(see new (40))*. | **(40)** any violation of Section 12022.53 *(see old (33))* |
| (34) Any attempt to commit a crime listed in this subdivision other than an assault *(see new (39))*. | **(39)** any attempt to commit a crime listed in this subdivision other than an assault *(see old (34))* |
| | (36) shooting from a vehicle, in violation of subdivision (c) or (d) of Section 12034 [driver or owner permitting firearms . . . in vehicle] |
| | (37) intimidation of victims or witnesses, in violation of Section 136.1 |
| | (38) terrorist threats, in violation of Section 422 |
| (35) Any conspiracy to commit an offense described in paragraph (25) as it applies to Section 11370.4 of the Health and Safety Code where the defendant conspirator was substantially involved in the planning, direction, or financing of the underlying offense. | |

| | **(41)** any conspiracy to commit an offense described in this subdivision |
|---|---|

Proposition 21 changed subdivision (c)(18) of section 1192.7 from a "*complete*[] 'duplicati[on of] the definition of first degree burglary' " (*People v. Murphy, supra,* 25 Cal.4th at p. 144, original italics) into a reference to the crime by degree. Before 1982, when "burglary of a residence" was a serious felony but section 460, subdivision 1, defined first degree burglary as the nighttime burglary of an inhabited dwelling, "[t]he upshot . . . [wa]s that the line between a first and second degree burglary did not match the line between a serious and nonserious felony for purposes of section 667. . . . In order to give retroactive effect to the enhancement provisions of 667, subdivision (c)(18) of section 1192.7 was interpreted as 'referring not to specific criminal offenses, but to the criminal conduct described therein . . . .' " (*People v. Brady* (1987) 190 Cal.App.3d 124, 140 [235 Cal.Rptr. 248] (*Brady*).)

Subsequent amendments of section 1192.7(c)(18) followed changes to section 460 but did not lead to the conclusion that *Brady*'s observation was outdated. Instead, courts approved the procedure that when " 'the definition of the qualifying prior conviction is not completely congruent with the definition of the crime of which the defendant has been convicted' " (*People v. Kelii* (1999) 21 Cal.4th 452, 456 [87 Cal.Rptr.2d 674, 981 P.2d 518]), " 'the trier of fact may look to the entire record of the conviction' but '*no further.*' [Citation.]" (*Ibid.,* original italics.) When the 1986 amendment to section 1192.7(c)(18) changed the burglary serious felony definition from "burglary of a residence" to " 'burglary of an inhabited dwelling house . . . or [any] inhabited portion of any other building,' " the amendment was interpreted as making section 1192.7(c)(18) "consistent with the current definition of first degree burglary. . . . [T]he change was one of clarification—to bring the language in line with the current definition of first degree burglary—not a substantive change." (*People v. Harrell* (1989) 207 Cal.App.3d 1439, 1444-1445 [255 Cal.Rptr. 750].)

Section 1192.7(c)(18) does not refer to the statute defining first degree burglary, section 460, subdivision (a), specifically. (See § 668.5.[5]) *People v. Murphy* points out that "both the electorate and the Legislature have enacted

---

[5]Section 668.5 provides, "An offense specified as a prior felony conviction by reference to a specific code section shall include any prior felony conviction under any predecessor statute of that specified offense that includes all of the elements of that specified offense. The application of this section includes, but is not limited to, all statutes that provide for an enhancement or a term of imprisonment based on a prior conviction or a prior prison term." (Added by Stats. 1999, ch. 350, § 2, eff. Sept. 7, 1999.)

other criminal statutes that define the triggering conduct or circumstance by express reference to" a violation of a specific statute. (*People v. Murphy*, *supra*, 25 Cal.4th at p. 143.) "Thus, the electorate and the Legislature have both shown that they know how to use language expressly requiring a violation of [a specific statute] when that is their intent." (*Ibid.*) Indeed, Proposition 21 changed other subdivisions of section 1192.7, subdivision (c) to refer to specific code sections. (See § 1192.7, subd. (c)(29) and (31).) Proposition 21 could have changed subdivision (c)(18) to read "any violation of section 460(a)" similarly to subdivisions (47), (38), and (40). Since it did not, we interpret the language chosen as evidencing a desire to continue providing additional punishment for pre-1983 "*conduct*, not a specific *crime*" (*People v. Guerrero* (1988) 44 Cal.3d 343, 355 [243 Cal.Rptr. 688, 748 P.2d 1150], original italics) as well as post-1982 residential burglaries, and to obviate the need to amend section 1192.7(c)(18) every time section 460, subdivision (a) is altered.

If we agreed with defendant that the purpose of the Proposition 21 change to section 1192.7(c)(18) was to define the serious felony burglary to avoid litigation over pre-1982 second degree burglaries or to give leniency to a class of by now middle-aged or elderly residential burglars who plied their trade before 1983, we run counter to the established interpretation of the words "*mak[e] offenders subject to longer prison sentences.*" (Guide, *supra*, Figure 1—Prop. 21 Summary of Fiscal Effects of Major Provisions, p. 47, original italics.) We also would be saying that the electorate before 2000 wanted *all* residential burglaries to add to the punishment of a recidivist, but in 2000, without saying so, changed its mind contrary to the stated intent in the ballot pamphlet and in previous case law. We may not make this leap. " '[T]he drafters who frame an initiative statute and the voters who enact it may be deemed to be aware of the judicial construction of the law that served as its source.' " (*People v. Superior Court (Arevalos)* (1996) 41 Cal.App.4th 908, 914 [48 Cal.Rptr.2d 833].) "It seems to us unlikely that the [electorate] intended to turn into lottery winners offenders who happened to commit their offenses during a lucky . . . window of time." (*People v. Superior Court (Blanquel)* (2000) 85 Cal.App.4th 768, 772 [102 Cal.Rptr.2d 429].) "And the [ballot argument] confirms our impression in that regard." (*Ibid.*)

Where uncertainty regarding a statute's construction exists, the court must consider the consequences that will flow from a particular interpretation. (*Holmes v. Jones* (2000) 83 Cal.App.4th 882, 889 [100 Cal.Rptr.2d 138].) The consequences we have considered confirm our opinion that defendant's wishful thinking is just that: wishful.

### SUFFICIENCY OF THE EVIDENCE

Defendant also challenges the sufficiency of the evidence that four of the five prior convictions were for burglaries of a residence. He contends

that his admissions that he entered "a house, located at 1185 Koch Lane, San Jose" and "a residence, located at 1643 Dry Creek Road, San Jose," (*People v. Garrett* (Super. Ct. Santa Clara County, 1980, No. 78076)), "a house, located at 1527 Foxworthy Avenue, San Jose" (*People v. Garrett* (Super. Ct. Santa Clara County, 1982, No. 85754)), and "an apartment, located at 2435 Rinconada #8, San Jose" (*People v. Garrett* (Super. Ct. Santa Clara County, 1980, No. 76523)) did not constitute an admission that "any of the locations . . . was 'currently used for dwelling purposes.'"

■ We examine the documentary exhibits received in evidence at the trial on the prior convictions in the light most favorable to the judgment below to determine whether they disclose substantial evidence—that is, evidence which is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Castellanos* (1990) 219 Cal.App.3d 1163, 1174-1175 [269 Cal.Rptr. 93].) Transcripts from preliminary hearings are part of the entire record of conviction and are admissible in evidence. (*People v. Reed* (1996) 13 Cal.4th 217 [52 Cal.Rptr.2d 106, 914 P.2d 184].) Charging documents in conjunction with a no contest plea may be considered in determining the truth of a residency allegation. (*People v. Castellanos, supra*, 219 Cal.App.3d at p. 1171.) A defendant's admissions in a probation report may be considered to determine the nature of a burglary. (*People v. Myers* (1993) 5 Cal.4th 1193 [22 Cal.Rptr.2d 911, 858 P.2d 301]; *People v. Castellanos, supra*, 219 Cal.App.3d at p. 1175.)

■ In case Nos. 78076 and 85754; defendant admitted entering the Foxworthy house "with intent to commit theft," the "residence, located at . . . Dry Creek Road . . . with intent to commit theft," and the Koch Lane "house, with intent to commit theft." The terms "residence" and "inhabited dwelling house" for purposes of a serious felony are equivalent. (*People v. Castellanos, supra*, 219 Cal.App.3d at p. 1175.) Defendant admitted entering each of these houses with intent to commit theft, which allows for the inference that these were not empty structures containing nothing worth stealing, but were inhabited. His admission why he entered the houses "provided evidence from which a rational trier of fact could make an inference of residence." (*People v. Goodner* (1992) 7 Cal.App.4th 1324, 1333 [9 Cal.Rptr.2d 543].)

In case No. 76523, defendant admitted burglarizing an apartment and admitted to the probation officer that his intent was to steal marijuana and money. He denied "doing damage to Mr. Alexander's apartment and said all he took was a necklace which he did not sell as it was confiscated by the investigating officer." "An apartment is listed within section 459 as a

residential area subject to its provisions. [Defendant] argues the term 'apartment' fails to prove that structure was inhabited for purposes of satisfying the requisite 'inhabited dwelling' component of residential burglary. [Citation.] This argument merely affects the weight of the evidence, not its admissibility. [Citation.]" (*People v. Castellanos, supra*, 219 Cal.App.3d at p. 1175.)

Substantial evidence supports the trial court's finding that each burglary was of a "residence."

## DISPOSITION

The judgment is affirmed.

Elia, J., and Mihara, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 29, 2002. Kennard, J. and Brown, J., were of the opinion that the petition should be granted.