Filed 6/8/23 P. v. Marion CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G061659 |
| v. | (Super. Ct. No. M-19641) |
| PATRICK JOHN MARION, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Jeannie M. Joseph, Judge. Reversed and remanded with directions.

James M. Crawford for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Nora S. Weyl, Deputy Attorneys General, for Plaintiff and Respondent.

Over 30 years ago, defendant Patrick John Marion was twice convicted of misdemeanor indecent exposure in violation of Penal Code section 314, subdivision (1), triggering a duty to register as a sex offender under section 290.[1]  In 2012, he suffered one misdemeanor conviction for failure to register, but he has otherwise dutifully registered for over two decades and been crime free since 2008.  In 2022, Marion filed a petition to terminate his duty to register as a "tier one" offender under section 290.5 (the petition).  While it is undisputed Marion met the statutory eligibility requirements, the People opposed the petition on the ground "community safety would be significantly enhanced by [Marion]'s continued registration."  (§ 290.5, subd. (a)(2).)  Following a hearing, the trial court denied the petition.

Section 290.5, subdivision (a)(3) requires the consideration of seven factors in determining whether community safety would be enhanced by continued registration.  None of those factors, when applied to our record, supports required continued registration in this case.  Our record contains *no* information regarding "the nature and facts of the registerable offense[s,] the age and number of victims[,] [or] whether any victim was a stranger at the time of the offense" (*ibid.*), much less shows any of those factors warrant continued registration.

Although the record shows Marion suffered several criminal convictions many years ago, it also shows he has not been convicted, or even arrested, for any criminal offense in the 14 years before he filed the petition, and he has not committed a registerable sex offense in 30 years.  While there is no evidence he completed "a Sex Offender Management Board-certified sex offender treatment program" (§ 290.5, subd. (a)(3)), there is no evidence such a program existed at relevant times, or that he was ever offered the opportunity to participate in one.  Finally, there is no evidence, in the form of risk assessment instruments or otherwise, showing Marion posed a "*current* risk

---

[1]  All further statutory references are to the Penal Code.

2

of sexual or violent reoffense." (*Ibid.*, italics added.) Because the court's order denying the petition is not supported by substantial evidence, we reverse.

FACTS AND PROCEDURAL HISTORY

In the petition filed April 4, 2022, then 57-year-old Marion stated he (1) is currently registered as a sex offender in Orange County; (2) has been designated by the Department of Justice to be a tier one offender; (3) has registered for at least 10 years; (4) has not previously filed a section 290.5 petition; (5) has no knowledge of any pending charges against him that could extend the time to complete the registration requirements of his tier; and (6) is not in custody, on parole, probation, postconviction supervised release, or any other form of supervised release. The petition was accompanied by proof of Marion's current section 290 registration and tier one status, a report from the California Sex and Arson Registry, and a document entitled "petition checklist" (capitalization omitted) prepared by the Orange Police Department confirming Marion's statutory eligibility for the termination of his duty to register.

The People requested a hearing and objected to the granting of the petition on the ground "[c]ommunity safety would be significantly enhanced by the petitioner's continued registration" within the meaning of section 290.5, subdivision (a)(2). The People did not object to the granting of the petition on the ground Marion was otherwise statutorily ineligible for the sought after relief. In support of the opposition, the People filed a summary of Marion's criminal history and a copy of his record of arrests and prosecutions (RAP) sheet.

After a hearing, the trial court denied the petition. The court's order stated the petition was denied because "[c]ommunity safety would be significantly enhanced by the petitioner's continued registration," based on the court's findings that were "stated orally on the record." The court's order also stated Marion may not file another petition

3

for termination from the sex offender registry for two years from the date of the denial of the petition.

Marion appealed.

DISCUSSION

I.

OVERVIEW OF GOVERNING LEGAL PRINCIPLES

"The Penal Code has included a 'comprehensive scheme' regarding sex offender registration since 1947, when the Legislature first enacted section 290 to require sex offenders to register with local law enforcement by providing a written statement, fingerprints, and a photograph. [Citations.]" (*People v. Nguyen* (2014) 222 Cal.App.4th 1168, 1187.) Before January 1, 2021, the Sex Offender Registration Act (§§ 290-290.024) required lifetime registration for defendants convicted of specified offenses, including for misdemeanor convictions for indecent exposure in violation of section 314, subdivision (1). (§ 290, former subd. (b) as amended by Stats. 2018, ch. 423, § 52; see *People v. Kennedy* (2011) 194 Cal.App.4th 1484, 1490.)

Effective January 1, 2021, the Legislature amended section 290's lifetime registration requirement to provide for a tiered system of registration time periods dependent on the offense for which the defendant was convicted. (See Stats. 2017, ch. 541, § 2.5; Stats. 2018, ch. 423, § 52; Stats. 2020, ch. 79, § 2.) A "tier one offender" must register for a minimum of 10 years, a "tier two offender" must register for a minimum of 20 years, and a "tier three offender" must continue to register for life. (§ 290, subd. (d)(1)(A), (2)(A), (3), respectively.)

Section 290.5 provides: "(a)(1) A person who is required to register pursuant to Section 290 and who is a tier one or tier two offender may file a petition in the superior court in the county in which the person is registered for termination from the sex offender registry on or after their next birthday after July 1, 2021, following the

4

expiration of the person's mandated minimum registration period . . . ."   That statute requires the person to serve the section 290.5 petition on the local law enforcement agency, which in turn, must report to the district attorney and the superior court in which the petition is filed "regarding whether the person has met the requirements for termination pursuant to subdivision (e) of Section 290." (§ 290.5, subd. (a)(2); *ibid.* ["The court may summarily deny a petition if the court determines the petitioner does not meet the statutory requirements for termination of sex offender registration or if the petitioner has not fulfilled the filing and service requirements of this section"].)

If the district attorney does not request a hearing on the petition to terminate registration, section 290.5, subdivision (a)(2) provides "the petition for termination *shall be granted* if the court finds the required proof of current registration is presented in the petition, provided that the registering agency reported that the person met the requirement for termination pursuant to subdivision (e) of Section 290, there are no pending charges against the person which could extend the time to complete the registration requirements of the tier or change the person's tier status, and the person is not in custody or on parole, probation, or supervised release." (Italics added.)

There is no dispute here the petition was properly served and the other section 290.5, subdivision (a)(2) requirements quoted *ante* were met. But here, the People did request a hearing on the petition under section 290.5, subdivision (a)(2), which further provides "[t]he district attorney in the county where the petition is filed may . . . request a hearing on the petition if the petitioner has not fulfilled the requirement described in subdivision (e) of Section 290, or if community safety would be significantly enhanced by the person's continued registration."

The People did not challenge the petition for failure to comply with section 290.5, subdivision (e). Subdivision (e) of section 290 provides for an extension of minimum registration time periods to account for time the defendant spent in certain forms of custody: "The minimum time period for the completion of the required

5

registration period in tier one or two commences on the date of release from incarceration, placement, or commitment, including any related civil commitment on the registerable offense. The minimum time for the completion of the required registration period for a designated tier is tolled during any period of subsequent incarceration, placement, or commitment, including any subsequent civil commitment, except that arrests not resulting in conviction, adjudication, or revocation of probation or parole shall not toll the required registration period. The minimum time period shall be extended by one year for each misdemeanor conviction of failing to register under this act . . . without regard to the actual time served in custody for the conviction. If a registrant is subsequently convicted of another offense requiring registration pursuant to the Act, a new minimum time period for the completion of the registration requirement for the applicable tier shall commence upon that person's release from incarceration, placement, or commitment, including any related civil commitment. If the subsequent conviction requiring registration pursuant to the Act occurs prior to an order to terminate the registrant from the registry after completion of a tier associated with the first conviction for a registerable offense, the applicable tier shall be the highest tier associated with the convictions."

The petition checklist, prepared by the Orange Police Department and filed in support of the petition, included appropriate extensions to Marion's minimum registration period under section 290, subdivision (e), and confirmed Marion exceeded the minimum required registration period so adjusted. Specifically, in the petition checklist, the Orange Police Department added one year to the 10-year required minimum term for Marion's 2012 misdemeanor conviction for failing to register and added another four years, five months, and 23 days to that sum to account for the time he spent in a period of subsequent incarceration, placement, or commitment. Consequently, the petition checklist stated Marion's adjusted total minimum registration period was 15 years, five months, and 23 days. The record shows Marion has been registering since at

6

least 2001,[2] and thus the adjusted minimum registration period had long passed (in 2017) at the time he filed the petition in 2022.

Instead, the People opposed the petition solely on the ground "community safety would be significantly enhanced by the person's continued registration." (§ 290.5, subd. (a)(2).) When, as in this case, the People request a hearing, subdivision (a)(3) of section 290.5 provides: "[T]he district attorney *shall be entitled to present evidence* regarding whether community safety would be significantly enhanced by requiring continued registration. In determining whether to order continued registration, the court shall consider: the nature and facts of the registerable offense; the age and number of victims; whether any victim was a stranger at the time of the offense (known to the offender for less than 24 hours); criminal and relevant noncriminal behavior before and after conviction for the registerable offense; the time period during which the person has not reoffended; successful completion, if any, of a Sex Offender Management Board-certified sex offender treatment program; and the person's current risk of sexual or violent reoffense, including the person's risk levels on SARATSO static, dynamic, and violence risk assessment instruments, if available. Any judicial determination made pursuant to this section may be heard and determined upon declarations, affidavits, police reports, or any other evidence submitted by the parties which is reliable, material, and relevant." (Italics added.)

---

[2] Our record does not show whether Marion began to register before 2001. At the hearing, the trial court asked the prosecutor if there was any information about that timing and the prosecutor confirmed she had no information. Our record does not explain what appears to have been a delay in Marion's registration or the circumstances of any such delay. Any such delay, however, is immaterial to the issue presented in this appeal.

## II.

### INSUFFICIENT EVIDENCE SUPPORTS THE TRIAL COURT'S ORDER DENYING THE PETITION

Marion argues the record does not support the trial court's finding community safety would be significantly enhanced by requiring him to continue to register within the meaning of section 290.5. We agree.

"The fundamental task of statutory construction is to 'ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute.' [Citation.]" (*People v. Cruz* (1996) 13 Cal.4th 764, 774-775.) By enacting section 290.5, the Legislature effectuated its intent of creating a pathway for certain sex offenders to seek relief from a lifetime duty to register. As discussed *ante*, upon satisfying the eligibility requirements of section 290.5, subdivision (a)(2), a petitioner is presumptively entitled to such relief, unless and until the People request a hearing. In the event such a request is made, pursuant to section 290.5, subdivision (a)(3), the People "shall be entitled to present evidence regarding whether community safety would be significantly enhanced by requiring continued registration." Consequently, section 290.5 imposes upon the People both the burden of producing evidence and the burden of proof in opposing the petition on the ground community safety would be significantly enhanced as a result. (See *People v. Thai* (2023) 90 Cal.App.5th 427, 435 [reversing order denying § 290.5 petition because prosecution failed to meet its burden "to establish with reasonable, credible, and solid evidence 'community safety would be significantly enhanced'" by requiring the petitioner's continued registration].) After considering the factors set forth in subdivision (a)(3) of section 290.5, the trial court determines whether to order continued registration (*ibid.*).

We review each of the section 290.5, subdivision (a)(3) factors against the record before us as follows.

A. *First Through Third Factors: Circumstances of the Registerable Offenses*

Our record contains *no* information regarding the first factor, "the nature and facts of the registerable offense"; the second factor, "the age and number of victims"; or the third factor, "whether any victim was a stranger at the time of the offense." (§ 290.5, subd. (a)(3).) In the opposition to the petition, the People reported (1) "[d]ue to the passage of time and purging of records, the People were unable to obtain the underlying police reports"; (2) "[t]he People were not able to ascertain the age or number of victims"; and (3) "[a]gain, due to the lack of police reports, it is unclear whether or not the victims were stranger[s] to [Marion]."

At the hearing, the trial court confirmed "[w]e don't have any details, it sounds like, regarding these crimes going off the RAP sheet. We just have indecent exposure. I'm just going to assume that's the nature of the crime, which is, you know, in the scheme of offenses is not the most serious, I'll just say." The court continued: "The second factor is the age and number of victims. Again, something we don't know. [¶] The third factor is whether any victim was a stranger at the time of the offense. We don't know that either." [3]

---

[3] The court later added: "Although I would also say factor two, the number of victims, since we have a number of different of these same charges [*sic*] where he was arrested four times for indecent exposure, I would say the number of victims doesn't weigh in his favor." The trial court should not have considered Marion's two arrests for indecent exposure that did not result in conviction in evaluating the *second* factor, which is focused on the age and number of victims of "*the* registerable offense[s]." (§ 290.5, subd. (a)(3), italics added.) Those arrests are relevant to the fourth factor, which we discuss *post*. The trial court also stated, with regard to the third factor, "But generally, I would say when you see the indecent exposure cases, they are strangers. But that would only be an assumption I could make based on the charge." As discussed *ante*, nothing in the record supports such speculation regarding the nature or facts of the registerable offenses or the victims involved.

Given the statutory presumption in favor of granting the petition sans proof community safety would be significantly enhanced otherwise, the absence of evidence regarding factors one through three favors granting the petition.

B. *Fourth and Fifth Factors: Other Criminal and Relevant Noncriminal Behavior and Period of Time During Which the Person Has Not Reoffended*

The fourth factor identified in section 290.5, subdivision (a)(3) is "criminal and relevant noncriminal behavior before or after conviction for the registerable offense." The fifth factor is "the time period during which the person has not reoffended." (*Ibid.*) The record contains Marion's RAP sheet and what is essentially a summary of the RAP sheet's contents, which show that, in addition to committing the two counts of indecent exposure that triggered Marion's duty to register, Marion also committed several offenses and had also been arrested for others, up until 2008.

That evidence shows in 1988 and again in 1994, Marion was convicted of committing misdemeanor disorderly conduct, further described in the RAP sheet as "solicit lewd act," in violation of section 647, subdivision (a). Our record does not provide any information regarding the circumstances surrounding the commission of those offenses.

Years before Marion suffered those two convictions, the Legislature removed violations of section 647, subdivision (a) from the list of registerable offenses in section 290. (See *In re Alva* (2004) 33 Cal.4th 254, 268, fn. 8 [After the Supreme Court in *In re Reed* (1983) 33 Cal.3d 914 held registration was cruel or unusual punishment for one convicted of public lewd solicitation under § 647, subdivision (a), the Legislature amended § 290 to delete the registration requirement for persons convicted of that offense. (Stats. 1985, ch. 929, § 4, p. 2936; *id.*, ch. 1474, § 1, p. 5403.)].) In any event, as acknowledged by the Attorney General in the respondent's brief, the RAP sheet shows for almost 30 years Marion has not been convicted of any type of sex offense, including

10

violations of section 647, subdivision (a), even if they may still be properly characterized sex offenses for purposes of registration issues.

Otherwise, the RAP sheet shows that in the 1990's and the early to mid-2000's, Marion suffered criminal convictions for an array of drug-related and theft offenses. Our record does not contain any information regarding the circumstances of such offenses either. Significantly, the record shows Marion has not committed any offenses, or even been arrested or detained on suspicion of having committed a criminal offense, since 2008—a span of 14 years prior to the time the petition was filed.

With regard to the fourth factor, the trial court stated it "doesn't weigh really in favor of the defendant." The trial court further observed Marion "ha[d] four arrests for indecent exposure, two convictions. They occurred between '85 and '94. [¶] But we do have, subsequent to that, a lot of other criminal conduct. And the defendant spent a lot of time in state prison as a result of the other conduct, *which probably wouldn't give him a lot of access to committing any further--this type of crime*." (Italics added.)

But as discussed *ante*, pursuant to subdivision (e) of section 290, Marion's minimum required registration time period was already adjusted from 10 years to over 15 years to account for his misdemeanor conviction for failing to register in 2012, and for the amount of time he was incarcerated after committing the registerable offenses.

As to the fifth factor, the court reiterated "it looks like our last criminal conviction was about 2008. So that is not an insignificant length of time, but it is certainly not that long considering his long criminal history." For the reasons we have explained, we disagree.

Given the temporal remoteness of Marion's criminal history to the filing of the petition, such evidence does not show that community safety would be significantly enhanced at this point in time by requiring Marion to continue to register.

11

C. *Sixth Factor: Completion of Sex Offender Treatment Program*

Section 290.5, subdivision (a)(3) also required the court to consider whether the record showed "successful completion, if any, of a Sex Offender Management Board-certified sex offender treatment program." While there is no evidence Marion completed "a Sex Offender Management Board-certified sex offender treatment program," (*ibid.*) there is no evidence such a program existed at relevant times, much less that he was ever offered the opportunity to participate in one.

As to this factor, the trial court acknowledged: "I probably wouldn't have expected it back in the '80s when he was convicted of indecent exposure," adding "but we have no knowledge that he did that." As the People had the burden of producing evidence and proving community safety would be significantly enhanced by Marion's continued registration, the dearth of evidence on this factor does not support denial of the petition.

D. *Seventh Factor: Current Risk of Sexual or Violent Reoffense*

The final and perhaps most important factor set forth in section 290.5, subdivision (a)(3) for the court to consider is "the person's *current* risk of sexual or violent reoffense, including the person's risk levels on SARATSO static, dynamic, and violence risk assessment instruments, if available." (Italics added.) Here, there is no evidence, in the form of risk assessment instruments or otherwise, showing Marion posed a "*current* risk of sexual or violent reoffense." (*Ibid.*, italics added.)

In the opposition to the petition, the People cited the California Sex and Arson Registry report submitted in support of the petition which showed in 2008, Marion scored a "6" on the Static-99, which the report noted to be a "high risk" level. No other information was provided regarding this test, the meaning of the score at that time, or how long the score might accurately predict risk. That evidence, therefore, is inadequate to show Marion's current risk of sexual or violent reoffense in 2022. The trial court

expressed concern about the 2008 Static-99 score "because I don't see any history of treatment." But nothing in the record shows how treatment would affect Marion's risk level 14 years after the test was administered.

E. *The Trial Court's Concluding Comments*

The trial court summarized its findings: "So I think the strongest factors here are that he doesn't have another conviction since 2008. But here is someone who has a history of multiple sex offenses and didn't do any treatment that I know of. So based on that, I am going to find that community safety would significantly be enhanced by requiring continuing registration. I don't know if that's what's kept him out of trouble since 2001 or 2008, whenever he started registering. I don't know if he has turned his life around in some other way. I didn't have any declarations explaining that he has received training or has changed in any way. [¶] So based on that, I will find that the People have met the standard. And I'm going to deny the motion and I will set three years for refiling. And I would recommend upon refiling that perhaps we hear more about anything that Mr. Marion has done to address and turn his life around. Because perhaps he has, I have no idea. I can't tell. I've heard nothing. That will be the Court's ruling."[4]

For the reasons we have already discussed, the fact Marion committed the registerable offenses over 30 years ago in and of itself does not support denial of the

---

[4] In response to Marion's counsel's subsequent request that Marion be permitted to refile a petition to terminate his duty to register in one year instead of three years, the court stated: "He has a long criminal history. I think he needs some time to make sure he is free of that." After counsel pointed out Marion's "long criminal history was all around the same time of the underlying offenses," "[t]here has been no re-offending for 14 years now," and "the underlying qualifying registering conviction was only a misdemeanor," the court agreed to permit Marion to refile in two years.

13

petition. Furthermore, the absence of evidence showing whether he ever received treatment does not support denial of the petition.

The Legislature has determined in section 290, subdivisions (d) and (e) the presumptive amount of time an offender should register following the commission of certain sex offenses. Whether Marion's act of registering itself might have "kept him out of trouble" is not a statutory factor; if it were, the petition of any tier one offender could be denied on that basis in contravention of section 290.5.

Marion has registered for a time period longer than the required minimum time period, as adjusted pursuant to section 290, subdivision (e). The People had the burden of producing evidence to prove community safety would be significantly enhanced by requiring Marion's continued registration, but failed to carry its burdens.[5] Marion did not have the burden under the statute to affirmatively produce evidence showing that he has turned his life around—and in light of the People's failure to produce evidence showing he posed a risk since 2008—had nothing to rebut in that respect. Consequently, the trial court erred in denying the petition in this case.

---

[5] As discussed *ante*, the evidence relied on by the People in opposition to the petition consisted entirely of a 14-year-old risk assessment and a criminal record which showed Marion had not committed any criminal offenses, or even been arrested or detained on suspicion of having committed a criminal offense, during the 14 years prior to the filing of the petition. While this appeal was pending, a panel of this court issued its opinion in *People v. Thai, supra*, 90 Cal.App.4th 427, in which the court clarified section 290.5 imposed on the People the burden of producing evidence and the burden of proof to show community safety would be significantly enhanced by continued registration.

## DISPOSITION

The order is reversed and the matter is remanded with directions to grant Marion's petition.


MOTOIKE, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

15